[Capehart *et al.* v. Furman Farm Improvement Co.]

# Capehart *et al.* v. Furman Farm Improvement Co.

*Action against Common Carrier for Failure to Deliver Goods.*

1. *Action against common carrier; right of consignor to maintain such action after goods reach their destination.*—Where in the sale of goods the seller stipulates to deliver them to the purchaser f. o. b. at a certain named place of destination, and in accordance with the contract of sale he ships them to said place, freight prepaid, consigned to the purchaser, upon the safe arrival of said goods at their place of destination, the seller's part of the contract becomes fulfilled, the title and ownership in the goods passes from him into the purchaser, and the carrier ceases to be the agent of the consignor for the custody and care of the goods, and immediately becomes the agent of the consignee; and in the event of a loss of or injury to the goods after their arrival at their place of consignment, and before they are unloaded, the consignor cannot maintain an action against the carrier for such loss or damage.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JOHN B. TALLY.

This action was brought by the appellee, The Furman Farm Improvement Company, against S. C. Capehart and Jasper Smith, as common carriers, to recover damages for the failure to deliver a certain lot of fertilizer. The complaint contained five counts. The first count sought to recover for the failure to deliver "certain goods, viz., 20 tons of Furman soluble bone, received by them as common carriers to be delivered to Scott & Ray, at Guntersville, Alabama." In the second count the plaintiff claimed damages for the defendants negligently allowing the fertilizer to be injured by being submerged in water, which fertilizer the defendants had received as common carriers, to be delivered to Scott & Ray at Guntersville, Alabama. The third count was substantially the same as the second. In the fourth count the plaintiff claimed damages for the defendants negligently permitting the fertilizer, which had been received by them as warehousemen, to be injured by being submerged in

water, and the complaint averred "that by reason of defendants' negligence said goods were injured while in the possession of the defendants as warehousemen." The fifth count of the complaint was as follows : "The plaintiff claims of the defendants the further sum of five hundred dollars damages for the failure to deliver certain goods, viz., 20 tons of Furman soluble bone, the property of plaintiff corporation, which were received by defendants as common carriers to be delivered to Scott & Ray at Guntersville, Alabama, for a reward, which defendants failed to deliver." Issue was joined on the plea of the general issue.

The evidence for the plaintiff tended to show that Scott & Ray purchased from it, through its agents, a large quantity of fertilizer; that the contract of sale was evidenced by a written instrument, in which it was stipulated that the goods sold should be "delivered f. o. b. at Guntersville, Alabama;" and it was also provided that the goods in the hands of the purchasers, "and the notes and proceeds therefor are held in trust for the payment" of the purchase price of the fertilizer. It was also shown that the fertilizer arrived in Guntersville on a barge, which was towed by the steamer R. T. Coles, on Monday, February 24th, 1890, and that they remained on the barge, which was tied to the landing at Guntersville, until the following Friday, when the barge, with the fertilizer sank in the river, and the fertilizer was injured thereby. The other facts of the case are sufficiently stated in the opinion.

At the request of the plaintiff the court gave the following written charge : "If the jury believe that plaintiff's guano was injured by the submersion in the river, while on the barge, and believe all the other evidence in the case, they should find a verdict for plaintiff." The defendant excepted to the giving of this charge, and also separately excepted to the court's refusal to give, among others, the following written charges : (1.) "If the jury believe the evidence, they will find the issue in favor of the defendants." (5.) "The court charges the jury that when the boat landed at Guntersville with the goods on board a barge, and the freight prepaid, the title to the goods instantly vested in Scott & Ray, and they alone could maintain an action against the defendants for any injury done it, if any, and the plaintiffs

[Capehart *et al.* v. Furman Farm Improvement Co.]

can not recover, and the verdict of the jury should be for the defendants."

There was judgment for the plaintiff, and the defendants appeal, and assign as error the giving of the charge requested by the plaintiff, and the refusal to give the several charges requested by the defendants.

LUSK & BELL, for appellants.—1. When goods are shipped according to the direction of the buyer, the title to the goods vests in the buyer *eo instanti* on delivery to the carrier.—*Jones v. Sims*, 6 Por. 138; *A. G. S. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173; 1 Chitty on Pleading, 158; Benj. on Sales, § 693.

2. The plaintiff can not recover against defendants in this action, their right of recovery, if any at all, is against the receiving carrier.—*A. G. S. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173; *M. & G. R. R. Co. v. Copeland*, 63 Ala. 219; *M. & E. Railway Co. v. Culver*, 75 Ala. 587.

3. The duty of the defendants as common carriers had ceased, and they were liable, if at all, as warehousemen.—*A. & T. R. R. R. Co. v. Kidd*, 35 Ala. 217; *C. & W. R. R. Co. v. Ludden & Bates*, 89 Ala. 615. When goods had reached end of transit, they were considered as subject to the orders of the consignees, and no longer under the control of the defendants as carriers.—12 Amer. & Eng. Encyc. of Law, 657.

AMOS E. GOODHUE, *contra*, cited *C. & W. Railway Co. v. Ludden & Bates*, 89 Ala. 614; Hutchinson on Carriers, §§ 720-734.

HEAD, J.—An important question in this case is, whether or not the plaintiff (appellee) has shown such ownership of the goods lost or injured, as entitles it to maintain an action against the carriers for the loss or injury sustained. The goods were purchased by Scott & Ray, who reside near Guntersville, Ala., from the plaintiff, doing business in Atlanta, Ga., from which point they were to be shipped to Guntersville, consigned to the purchasers. The purchase was evidenced by a written instrument wherein it was stipulated that the goods were to be "delivered f. o. b. at Guntersville, Ala." The shipment was made by plaintiff in Atlanta, by delivery to the Western and Atlantic Railroad Company, under a bill of

lading issued by that company, showing consignment, freight prepaid, to Scott & Ray, Guntersville, Ala., care of S. D. Weather, per steamer R. T. Coles at Chattanooga. The bill of lading was forwarded to and received by the consignees. The goods were safely carried by the railroad company to Chattanooga, and there delivered to defendants, common carriers by Tennessee river transportation, to be carried to Guntersville, a point on the river. Defendants loaded these, with other goods, on a barge at Chattanooga, on which, towed by the Steamer R. T. Coles, they were safely transported to Guntersville, where the barge was landed and moored. Several days after this landing, the barge nor the goods thereon having been removed, the loss or injury complained of occurred. It is gravely controverted by the parties, whether or not, under the peculiar facts shown in evidence, the liability of defendants, as common carriers, had terminated at the time the loss or injury occurred; but defendants contend that, howsoever that may be, whether there had been or not such a constructive delivery to the consignees as destroyed the liability of the carriers, as such, yet, under the contract between the plaintiff and Scott & Ray, the contingency had happened upon which all title and ownership in the goods had passed out of the plaintiff, the consignor, and into Scott & Ray, the consignees; whereby, under the rule obtaining in this State, the consignees only can sue, as owners. We think this contention is sound. We have seen that the contract of the consignor was "to deliver f. o. b. at Guntersville, Ala." It is admitted that f. o. b. means "free on board." Indeed, we judicially know the fact.—*Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446. The effect of the stipulation is that the consignor will place the goods, loaded on the car or vessel wherein transported, at the designated point of destination, free of all expense to the consignee.—*Sheffield Furnace Co. v. Hull Coal & Coke Co.*, *supra*. When, therefore, the plaintiff paid the freight charges and caused the boat to be landed at Guntersville, with the goods safely thereon, properly consigned to Scott & Ray, it completely fulfilled its contract; the carriers ceased to be its agents for the custody and care of the goods, and immediately became the agents of the consignees. The relations of the parties then became precisely the same in effect, as if the contract of the plaintiff

had been to deliver f. o. b. at Atlanta, and the loss or injury had occurred en route, before reaching Guntersville. In such case, the carriers would have been regarded as the agents of the consignees, and the delivery to them f. o. b. at Atlanta, would have passed the title to the consigneee. This contract is not susceptible of any other construction. To hold that delivery of the goods by the carrier to the consignee was essential to terminate the ownership and responsibility of the consignor, would be to change the contract of the parties. The whole theory of the plaintiff, in support of this action, is, that the mere arrival of the boat at the landing, with the goods on board, and its stay there for several days, did not terminate the liability of defendants, as common carriers, for the reason that, on the undisputed evidence, as between carrier and owner, delivery was not to be made by carrier on board the boat; and hence the goods were not ready for delivery while they remained thereon, by reason of which consignees were under no duty to be there to receive them. If, then, there could be no delivery by the carrier to the consignee, whilst the goods were on board the boat, it follows, logically, that plaintiff did no bind itself to cause an efficacious delivery, as between carrier and consignee, to be made, because, confessedly its obligation was to deliver only on board the boat a Guntersville. Suppose the consignment had been entirely by rail, under obligation of consignor to deliver f. o. b. car, at Guntersville; and, at that point, the railway company had its depot and warehouse, wherein it was essential to store goods received, and give the consignee a reasonable time to take them away, before he could be charged with a constructive delivery which would terminate the common law liability of the carrier, would counsel contend that the consignor must not only see that the goods are delivered at Guntersville, on board the car, free of all expense, but go further and see that they are unloaded and placed in the warehouse, and a reasonable opportunity given the consignee to take them away? We think not, with any show of legal authority. The question under discussion may be fairly tested by supposing an action by the plaintiff against Scott & Ray for the price of the fertilizer. Could its right of recovery be doubted, when it showed the boat, with the goods on board, safely landed at the proper place at Guntersville,

and all expenses prepaid? In the present condition of the record, the defendants were entitled to the general charge which was refused, because of the views above expressed.

There is one phase of the contract under which the goods were purchased, upon which the plaintiff might maintain an action properly framed to meet it. By the contract, the plaintiff retained a lien on the goods for the security of the purchase money. Is it only a lien? So long as the purchase money remains unpaid an action on the case lies, in favor of the plaintiff against any one negligently or willfully destroying the lien. We have examined the record to see if the proceedings of the court below can be sustained upon this phase of the contract, and find they can not. There are five counts in the complaint. The first four show no connection whatever of the plaintiff with the goods or their carriage. Under them, it is the merest stranger to the whole transaction. Under several decisions of this court, such a complaint shows no cause of action. It will not support a judgment.—*M. & W. P. R. R. Co. v. Edmonds*, 41 Ala. 667; *Douglas v. Beasley*, 40 Ala. 142; *Browder v. Gaston*, 30 Ala. 667; Code, § 2835. We leave these counts out of view. The fifth count is by the plaintiff as *owner* of the goods, to enforce the common law liability of the carriers for failure to deliver. It is manifest it can not recover under this count, as a mere lien holder, for a destruction of its lien. There is neither sufficient pleading nor proof to warrant such a recovery. We will not undertake to point out the essentials of pleading and evidence to support such an action, or indicate any opinion, upon what we find in the present record, touching the rights of the parties therein. We merely call attention to this phase of the contract to show that it can not support the proceedings of the lower court.

Reversed and remanded.