55 So.2d 856

**SANFORD SERVICE CO., Inc. v. CITY OF ANDALUSIA**

4 Div. 653.

Supreme Court of Alabama.

May 24, 1951.

Rehearing Denied June 28, 1951.

Further Rehearing Denied Jan. 10, 1952.

Powell, Albritton & Albritton, Robt. B. Albritton and Albert L. Rankin, all of Andalusia, for petitioner.

Jas. M. Prestwood, Andalusia, opposed.

FOSTER, Justice.

This suit is to test the legal right of a city to levy an excise tax on the act of delivering by the seller in the consummation of a sale of petroleum products in the City of Andalusia, after transporting the same in one act from without the city and state through a portion of the city directly to the place of business of a customer in the city and unloading same directly from the taxpayer's tank trucks, so engaged, into the tanks of its said customer within said city (the taxpayer not being at the time a carrier), under an ordinance of the city. The pertinent provisions of which ordinance are as follows:

"Freight or Produce Delivery: Each person, firm, corporation or motor transportation company who unloads, delivers, distributes or disposes of any goods, wares, merchandise or produce, including fuel oil, lubricating oil, gasoline, kerosene or other hydrocarbons, in the City of Andalusia, Alabama, which said goods, wares, merchandise or produce, including fuel oil, lubricating oil, gasoline, kerosene or other hydrocarbons were transported from a point without the City of Andalusia, Alabama, to a point within the City of Andalusia, Alabama.

"Per year ............... $112.50
Per week............... 10.00
Per day ............... 2.00"

It will be observed that, for all practical purposes, the ordinance is the same and the question as to it is likewise the same as that considered in Sanford v. City of Clanton, 31 Ala.App. 253, 15 So.2d 303, certiorari denied 244 Ala. 671, 15 So.2d 309: also our case of City of Enterprise v. Fleming, 240 Ala. 460, 199 So. 691, and State v. Coca Cola Bottling Works, 29 Ala. App. 508, 198 So. 363.

It is not materially affected by the case of Dorsky v. Brown, 255 Ala. 238, 51 So.2d 360, which was also controlled by the principles declared in the Sanford case, supra.

The Sanford case was decided in 1943, before the decisions in Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993, and Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct.

508. It is contended that those cases modify the rule on which the Sanford case was based. In that case the Court of Appeals, in which this Court concurred on certiorari, tried to interpret the decisions of the United States Supreme Court, which were thought to have application, leading to a holding that the tax was not on interstate commerce as there applied, or an undue burden on interstate commerce. McGoldrick v. Berwind-White, 309 U.S. 33, 60 S. Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876.

It seems now that those broad principles have not been limited or modified, but open a wide avenue for difference of opinion in their application. It has been said that the levy must not impede the free flow of trade between the states, nor be laid on interstate commerce directly. Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L. Ed. 265; Morgan v. Com. of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317; Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S.Ct. 380, 75 L.Ed. 953; Spector Motor Service v. O'Connor, supra. It is not controlling that local commerce is subjected to a similar incumbrance. Freeman v. Hewit, supra.

The question here is whether those principles serve to support the tax in question as applied to plaintiff. As to plaintiff, that tax contains all of those elements of a permissible tax without question, except that of whether it is laid on interstate commerce or impedes its free flow. We do not think that it is accurate to hold that it is laid on such commerce as applied to plaintiff in hauling his own goods and delivering them pursuant to a contract of sale made by him. It is more properly laid upon a feature of such contract of sale.

The case of McGoldrick v. Berwind-White, supra, was based on a sales tax imposed by the City of New York on the sale of goods delivered within the city, purchased for shipment from outside the city and transported in interstate commerce as a part of their delivery in the city. We can see no difference between such a situation and one where the seller himself transports the goods as a part of the delivery rather than to have them transported by an independent transportation com-

pany. In neither case is there any tax or other burden upon commerce. The burden falls, and the tax is laid, not upon the transportation, but upon the delivery as an act in consummating a sale between persons who may or may not have an interest in the transportation, but whose relationship is exclusive of transportation, although transportation is necessary to its consummation. We do not think the Berwind-White case, supra, followed by our Sanford case, supra, has been modified by any later cases, to which we have been referred. See Annotation 128 A.L.R. 901 et seq. The case of Freeman v. Hewit, supra, manifests no purpose to reflect upon it as an authority. The other cases relied on are not in point, as we will show.

We of course concede that, when such unloading is at the end of a continuous movement in interstate commerce, it is a feature of such commerce. Puget Sound Stevedoring Co. v. Tax Commission of Washington, 302 U.S. 90, 58 S.Ct. 72, 82 L. Ed. 68. But this tax was not laid, as respects this plaintiff, on delivery as a feature of such commerce, but as a feature of a sale made by the taxpayer to his purchaser as in the Berwind-White case, supra, and as in Caskey Baking Co. v. Com. of Virginia, 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223.

In the Joseph case, supra, the business of the taxpayer was that of stevedoring, serving vessels in interstate commerce. The court struck down the tax declaring that stevedoring is an essential part of the commerce, and the tax was upon the privilege of conducting that business measured by a percentage of the gross receipts and was an interference by the state with the freedom of interstate commerce. It was a burden primarily on interstate commerce. It demonstrates that the principles we relied on in the Sanford case, supra, have not been modified, and so our duty now is to apply them again.

In the Spector case, supra, the court was dealing with a state tax measured by the income received from business transacted within the state during the tax year upon each corporation or association carrying on business of a certain sort in the state. The tax was to be an excise upon its franchise for the privilege of carrying on or doing business within the state. The taxpayer in that case was engaged solely in the interstate transportation of freight by motor truck and was doing such business within the taxing state. The opinion noted that the tax which was levied was not a fee for an inspection or on sales or for use, but it was an excise based unequivocally upon the corporate franchise or the privilege of carrying on exclusively interstate transportation in the state. It was noted that the question of whether a state may validly make interstate commerce pay its way depends, first of all, upon the constitutional channel through which it attempts to do so. Applying that principle to such situation, the court observed that the incidence of the tax provides the answer, since the courts of that state have held the tax attaches solely to the franchise of the petitioner to do interstate business, but it was also stated that "the State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State * * *, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory." [340 U.S. 602, 71 S. Ct. 512.] The privilege of carrying on business in the state exclusively interstate in character cannot be locally taxed, and it was held that such was the nature of the tax there involved. See, also, Freeman v. Hewit, 329 U.S. 249, 67 S.Ct 274, and authorities supra.

The tax imposed in the Spector case, supra, was upon the act of transportation itself, levied on one for doing an interstate business. The quotation above shows that the court did not intend to revise or overrule the principle that taxes may be validly imposed, although their payment may come out of funds derived from interstate business, provided their business is reasonably related to the powers of the state and nondiscriminatory, and not laid on interstate commerce itself.

Applying the foregoing principles to the situation with which we are here dealing

we note a material distinction between the Joseph case and the Spector case, supra, on the one hand, and the Berwind-White case, supra, on the other. In the first two cases the tax was imposed directly on the transportation or a feature of transportation in interstate commerce. The Berwind-White case, followed by us in the Sanford case, supra, dealt with a tax which was not placed, as there applied, upon the act of transportation or a feature of it, but upon an act involved in dealings between persons consummated by transportation in interstate commerce. Such a tax, not imposed directly upon interstate commerce, is not invalid merely because interstate commerce entered into the transaction which was taxable, provided the tax, which was so imposed, was reasonably related to the powers of the state and nondiscriminatory, and not a burden on interstate commerce. Caskey Baking Co. v. Com. of Virginia, 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223; State v. Coca Cola Bottling Works, 29 Ala.App. 508, 198 So. 363.

This ordinance applies equally to deliveries in the City of Andalusia, without regard to whether the transportation began within or without the state. There is no allegation in the complaint showing that the local situation was such as that the tax was peculiarly aimed at or more directly affected interstate transactions than intrastate transactions.

There is no doubt of the fact that the City of Andalusia could pass an ordinance fixing an excise tax on the delivery of property in the city, although the transportation began at a point outside of the city. The broad authority given a city in the exercise of its police and revenue producing power fully justifies such an ordinance. Title 37, sections 455, 735, Code of 1940; City of Enterprise v. Fleming, 240 Ala. 460, 199 So. 691.

As said above, we think beyond doubt, it results from the foregoing that the City of Andalusia is in the exercise of its lawful authority in imposing a license tax for the delivery within its corporate limits of goods sold by the taxpayer, although transported by it from a point beyond the city's corporate limits, and that such a license tax will be upheld although the delivery is at the end of interstate transportation, when such license tax is nondiscriminatory and is not a burden on the free flow of interstate commerce or laid upon the business of interstate commerce or any feature of it.

Writ of certiorari denied.

LIVINGSTON, C. J., and LAWSON and STAKELEY, JJ., concur.

### On Rehearing.

FOSTER, Justice.

The question of the effect of a transaction, somewhat similar to that here involved, upon interstate commerce has been discussed also in the case of McLeod v. J. E. Dillworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304. In that case it was held that, under the circumstances there existing, the tax was a burden upon interstate commerce for that the taxpayer was shipping goods by interstate commerce from Tennessee into the state of Arkansas. It had its offices in Tennessee where the sale was made and consummated by delivery f. o. b. in Memphis, Tennessee, in interstate commerce for shipment to the purchaser in Arkansas. The sale was therefore completed, so far as the seller was concerned, in the state of Tennessee when the delivery was made f. o. b. to the interstate carrier. The delivery in Arkansas was not necessary to a completion of the transaction.

The controlling distinction between the Dillworth case and McGoldrick v. Berwind-White, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, is in the fact that the delivery in New York in the latter case was necessary to a completion of the sale, whereas in the Dillworth case the sale was completed when the goods were placed f. o. b. with the interstate carrier in Memphis. The general rule of law applicable to sales is that "where the agreement is to sell goods 'f. o. b.' (free on board) a designated place, such place will ordinarily be regarded as the place of delivery." 55 Corpus Juris 332. This is also in accordance with the Uniform Sales Law, Title 57, section

25, Rule 5, Code of 1940. Capehart v. Furman Farm Imp. Co., 103 Ala. 671, 16 So. 627; Sheffield Furnace Co. v. Hull Coal & Coke Co., 101 Ala. 446, 14 So. 672; Hatcher v. Ferguson, 33 Idaho 639, 198 P. 680; 16 A.L.R. 597.

So that instead of the Dillworth case being authority to the contrary, it does not in any respect conflict with what we have said in the instant case. It does not overrule the Berwind-White case and does not conflict with it. The result is controlled, as we have said, by the fact that the petitioner was obligated by the contract to deliver the goods into the possession of his customer and in his tanks in the City of Andalusia, and the sale was not complete until that occurred. Such delivery was a feature of the sale, not of the transportation. Whereas, in the Dillworth case the sale was completed by the seller when he delivered the goods f. o. b. Memphis to the carrier for shipment into Arkansas.

We have given attention to the case of Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, but we did not treat it specifically because the same principles declared in it had been analyzed and fully stated and distinguished in the Berwind-White case, supra, all to the same effect.

On this application, as on the original submission, petitioner argued that the ordinance in question is discriminatory against petitioner who transported his property over the state line and as an out of state distributory in favor of a local distributor of the same kind of product, and contended and is still contending that the Nippert case, supra, and other drummers' license fee cases, support that contention and that they should be here applied. We stated in the opinion, supra, that we did not consider the license tax discriminatory, meaning inherently so, and observed that there is no allegation in the complaint showing the local situation or that the tax was aimed at the out of state distributors. We think the question whether it is discriminatory in favor of local distributors whose business is completely local, is not presented by this record. There is nothing in the complaint on which to base that contention.

The question here is solely upon the sufficiency of the complaint tested by the demurrer to it. The complaint alleges that the license tax is a burden upon interstate commerce, without explanatory detail in respect to the claim of discrimination made in brief. We think it could not be so interpreted as to mean that the ordinance is more than inherently subject to attack on that ground. We treated it upon that basis in our opinion, supra, and we think that treatment is proper. We repeat therefore that the question of whether it is discriminatory in favor of local distributors is not here presented, and we are not called upon to determine what is the meaning of the decisions of the Supreme Court of the United States as they affect that question.

This is emphasized by the further fact that the complaint does not show that local distributors, whose business is done wholly within the city, if there are such who are competitors with petitioner, are not subject to an ordinance license tax comparable to that here in question.

We cannot assume that the tax here in question is discriminatory when there are no facts alleged upon which such a conclusion may be reached.

There was no such contention made in the case of Sanford v. City of Clanton, supra. While the argument was made here, the emphasis was placed on the contention which was fully considered in the Berwind-White case, supra.

Our attention has been called to the case of City of Winchester v. Lohrey Packing Co., 237 S.W.2d 868, by the Kentucky Court of Appeals, not officially reported. The ordinance in that case laid a license tax for "soliciting for sale, selling or delivering". The taxpayer had a solicitor who lived in Kentucky and who obtained and transmitted the orders to the taxpayer out of state. We observe that this is controlled by the drummers' tax cases, Nippert case and others. That case found the distinction between the Berwind-White and Nippert cases to be that in the former the coal was transported to New York before the tax

512

was applied, and in the latter the tax was for soliciting before the transportation began.

But in our opinion that is not the controlling distinction which is efficacious. The delivery of the coal in New York was completing the transportation and not after it had ended. We think the Nippert case, supra, which is a drummers' license tax, was based more emphatically upon the alleged discrimination there created in favor of local merchants who were not subject to the tax, but who were competitors of out of state merchants who were subject to it. But if the important distinction between the two lines of cases is as the Kentucky opinion in the Lohrey case seems to indicate, the instant case would fall on the side of Berwind-White rather than Nippert.

The application for rehearing is overruled.

LIVINGSTON, C. J., and BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.