90 So.2d 385

STATE of Alabama

v.

NATCO CORPORATION.

6 Div. 996.

Supreme Court of Alabama.

Nov. 1, 1956.

John Patterson, Atty. Gen., Willard W. Livingston and H. Grady Tiller, Asst. Attys. Gen., for appellant.

Wm. S. Pritchard, Winston B. McCall, Victor H. Smith and Pritchard, McCall & Jones, Birmingham, for appellee.

STAKELY, Justice.

There appear on the docket of this Court two cases, respectively, State of Alabama v. Natco Corporation, 6 Div. 996, and State of Alabama v. Natco Corporation, 6 Div. 997, 90 So.2d 389. These two cases by agreement of the parties were consolidated in the circuit court and by agreement of the parties have been consolidated in this Court. Case No. 6 Div. 996 involves an assessment for use taxes made by the State Department of Revenue for the period from January 1, 1952, through September 30, 1954 and Case No. 6 Div. 997 involves an assessment by the State Department of Revenue for sales taxes covering the period from October 1, 1951, through October 31, 1954. However the items which are controverted in each case are identical and may be described here as charges for "freight" and charges for "detailing". These items will be described later. In Case No. 6 Div. 996 the controverted items which are included in the assessment are freight $282.60 and detailing $5.65, while in Case No. 6 Div. 997 the controverted items included in the assessment are freight $792.96 and detailing $51.38. From the final assessment made in each of these cases by the State Department of Revenue an appeal was taken to the circuit court for the Tenth Judicial Circuit of Alabama, in Equity, where Natco Corporation, a corporation, filed a bill. The State filed an answer in each case. Trial was had ore tenus with the result that the Court set aside the assessment for the controverted items in each case and held that as to such items no tax was due.

The only evidence in the case consisted of some written exhibits, the testimony of K. H. Potts, testimony of Albert R. Estell and a stipulation between the parties as to the amount of the items involved. The testimony of the witness Estell, the Comptroller of Natco Corporation, deals only with the amounts set forth in the stipulation.

Mr. K. H. Potts testified in behalf of the taxpayer and his testimony in substance

showed the following. He was the Southern Sales Manager of the Company and resided in Birmingham, Alabama, and had been so employed by the Natco Corporation for about twenty years. The company was engaged in the production of clay products such as structural glazing tile, clay conduits, floor tile, roofing tile and sewer pipe, sewage drain plates, filter drains, etc. The items mentioned are used in construction work. The manufactured products were shipped either from the plants of the appellee in Alabama to points within this State or were sold from the plant of the appellee located outside of the State of Alabama and shipped to customers at points within the State of Alabama.

The charges for freight in the assessments represent the cost of transportation of the product from its place of manufacture or production to the place of its use. The items described as "detail" involve the manufacturing or making of what might be appropriately called a blue print for the use and placement of the materials sold by the company to its customers in Alabama.

While the concepts with respect to the use tax are somewhat different from those of the sales tax, this Court has held that the two laws are complementary one to the other and has construed them as being in pari materia. For a discussion of the characteristics of these two taxes we refer to Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812.

■■■ I. The questions to be determined in this case are (1) Did Natco Corporation receive as a part of the gross proceeds of the related sales the cost of transportation to the purchasers, or were such charges paid by the purchasers in addition to the sales price? (2) Did the "detailing" constitute tangible personal property subject to the sales tax or the use tax?

Section 788 as amended, Title 51, Code of 1940, levies the use tax and is so far as here material as follows:

"(a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail on or after the first of March, 1939, for storage, use or other consumption in this state at the rate of three percent of the sales price of such property, regardless of whether the retailer is or is not engaged in the business in this state, except as provided in subsection (b) of this section."

Since the use tax is based upon or measured by the sales price of the tangible personal property sold and as said term "sales price" has been defined by the legislature, we call attention to the following statute.

"The following words, terms and phrases when used in this article shall have the meaning ascribed to them in this section, except where the context indicates a different meaning: * * * (j) The term 'sales price' means the total amount for which tangible personal property is sold, including any services (including transportation) that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest charged, losses or any other expenses whatsoever; provided, that cash discounts allowed and taken on sales shall not be included and sales price shall not include the amount charged for property returned by customers when the entire amount charged therefor is refunded either in cash or by credit." § 787, Title 51, Code of 1940, as amended.

It will be observed that the word "transportation" appears in the foregoing statute and for transportation to come within the levying section, services (including transportation) must be a part of the sale, valued in money, whether paid in money or otherwise. It may also be observed that included in the sales price there is the

amount for which credit is given to the purchaser by the seller and that included in the measure of the tax is "any other expenses whatsoever". In other words, it seems obvious that if the taxpayer included the transportation charges in the sales price of the articles sold, the measure of the tax would be the entire sales price, including transportation.

There were introduced in evidence by Natco certain exhibits marked, respectively, A–1, through A–6. These exhibits to which we refer are specimen forms of purchase orders and quotations for the different kinds of material for sale by Natco. In each of these exhibits appears the following: "The above prices for material F. O. B. cars or works, with freight allowed in carloads to (destination.) * * * The above prices are for material F. O. B. our works, with trucking allowed to Job Site. Job site means to a point only where accessible by truck and not unloaded." It will be noted that in each of these exhibits the following language appears: "It is expressly provided that all prices quoted were for material F. O. B. our works." It is the general rule of law that where the agreement is to sell goods F. O. B. a designated place, such place will ordinarily be regarded as the place of delivery. Sanford Service Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856. And further the general rule is that delivery of personal property by the seller to a common carrier to be conveyed to the purchaser is a delivery to the purchaser and the title to the property vests in the purchaser immediately upon its delivery to the carrier. Bank of Guntersville v. Jones Cotton Co., 156 Ala. 525, 46 So. 971; Alabama Great Southern R. Co. v. H. Altman & Co., 191 Ala. 429, 67 So. 589. This general rule and some of the exceptions thereto are stated in § 25, Title 37, Code of 1940. See State of Alabama v. Pan-Am Southern Corp., ante, p. 51, 89 So.2d 747.

But the following language also appears in connection with the words which have been quoted in the foregoing exhibits: "With freight allowed in carload lots to (destination) or with trucking allowed to job site (destination)." In other words, it is the earnest insistence of the State that when the entire language is taken together it shows that the price includes the cost of transportation. The testimony of the witness Potts shows that the latter words were placed in the contract with the destination to be filled in for the convenience of the contractors in order that they might know the delivered cost on the job of the material involved. The State introduced in this connection what are designated as Exhibits X, Y, Z, which are copies of invoices of material shipped from appellee's plants in Alabama to points within the State. These invoices were first shown to the witness, Potts. The witness Potts explained that the carriage charges were not included in the gross sales price but were paid as a separate cost by the consignee. In cases similar to that shown by Exhibit X the haulage was prepaid by Natco for the convenience of the purchaser and a separate charge as to the freight was made. His testimony further showed that there were some occasions in which the price at which the material was sold included the carriage charges. In those instances Natco included such transportation cost as a part of the sales price and accounted to the State Department of Revenue for them and they are not involved in any manner in either of the present cases. The gist of the testimony of the witness Potts with reference to the transportation charges is shown by the following answer to the following question which the witness made after the Exhibits A–1 through A–6 were identified.

"Now, I want to ask you with respect to the sales tax here in dispute, both under the sales tax case and the use tax case, as to the stipulation with respect to the f. o. b. point? A. All our sales are made f. o. b. our factory and most of our material is sold to contractors in this area. They want the cost of the material and the distance so they can figure the prices

of it and the conveyance we accord the freight and add it to the plant price and tell them what the total freight and plant price is so they can figure and bid on the contract. We sign the bill of lading at the plant, and the title to the material goes to the . consignee."

The witness further testified in substance that the purchaser paid the transportation charges and that none of the transportation charges were paid as part of the selling price of any property involved.

It is further shown that Regulation 14 of the State Department of Revenue which was made pursuant to statutory authority recognizes the situation as described by the testimony of the witness Potts. The regulation in substance provides that if the seller contracts to sell tangible personal property F. O. B. origin the title to the property passing at such point to the buyer and the buyer pays the transportation charges, then the transportation charges are rendered to the buyer and are not a part of the selling price of the vendor. Thereafter such transportation charges should not be included by the vendor in computing his tax liability on the account.

To sum up the situation, the Court held and we think correctly so, that Natco did contract to sell and did sell tangible personal property f. o. b. origin. Accordingly as a matter of law as well as in accordance with the evident intention of the purchasers, the title of the property passed at the point of origin to the buyer and the buyer paid the transportation charges. Thus the transportation charges were rendered to the buyer and were not a part of the selling price and were not due to be included by Natco in computing its tax liability.

■ II. The nature of "detailing" is shown by the testimony of the witness Potts where he said:

"We get an order for structural glazing tile and other products. Lots of times, the customer wants a lay-out drawing or engineering services to show how the material goes into the wall, how it is used. So, we prepare the details, drawn by the Engineering Department, that shows him just where to put it and how to use it."

In answer to the question, "In other words, as a part of your sales activities, you also prepare this detailing which is an engineering service, is that right?" The witness answered, "It is done apart from our normal sales. The service is not included in the original sale at all. It is a service rendered outside the original sale. I would say most of our sales do not include the detailing. We do it in certain instances where the customers desire the service." The witness further testified that it was done as a convenience to the customer, purely an engineering service and not part of the sale at all and the billings for these engineering services and detailing were made separately. In other words, the customer was billed just like an architect would bill his services for drawing plans. The detailing was in substance and effect similar to an architect's plan and had nothing to do with the production material at all. The witness further testified that if the detailing was furnished, it was furnished in the form of a blue print showing where and how certain tile fit into the building.

In State Tax Commission v. Hopkins, 234 Ala. 556, 176 So. 210, the court held that the act should not be extended so as to tax one's income from personal skill in the exercise of a profession.

In Dun & Bradstreet v. City of New York, 276 N.Y. 198, 11 N.E.2d 728, 731, in holding that the tax law did not apply for services rendered except in particular instances, the court said:

"The information furnished is of value to the subscribers and for it they pay but not for the paper upon which the information is conveyed or for the reference books which are only guides.

to assist in the rendition of appellant's service. One does not think of a telephone company as a seller of books to its subscribers. It renders a service. To make that service efficient, it furnishes its subscribers with books containing a list of its subscribers with their call numbers. 'The paper is a mere incident; the skilled service is that which is required.' * * *"

In the case at bar the court held that the cost of detailing furnished in the present instance was for personal services rendered and, therefore, not within the act. The court acted correctly and its decree should be upheld.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.