145 So.2d 177

**STATE of Alabama**

v.

**TWIN SEAM MINING COMPANY, Inc.**

**6 Div. 468**

Supreme Court of Alabama.

Sept. 20, 1962.

MacDonald Gallion, Atty. Gen., Guy Sparks, Sp. Asst. Atty. Gen., and Wm. H. Burton, Asst. Atty. Gen., for appellant.

**4**

McQueen & McQueen and Jas. E. Morrisette, Tuscaloosa, for appellee.

Graham, Bibb, Wingo & Foster, Cabaniss & Johnston, Peyton D. Bibb, Lucien D. Gardner, Jr., and E. T. Brown, Jr., Birmingham, amici curiae.

COLEMAN, Justice.

This is an appeal by the State from a decree of the circuit court, in equity, wherein the court set aside and held for naught a use tax assessment made by the Department of Revenue against the appellee as taxpayer.

The Department of Revenue determined that taxpayer was liable for use tax on a certain dragline owned by taxpayer and used by it exclusively in mining coal. From the assessment by the Department, taxpayer appealed to the circuit court, in equity, as provided by § 140, Title 51, Code 1940, as amended.

The determination by the court, that taxpayer is not liable for the tax, is assigned as error.

The dragline weighs approximately 500 tons, including bucket which weighs approximately 22,700 pounds. The dragline moves or "walks" approximately 15 feet per minute or 900 feet per hour and is used exclusively in strip mining.

The bucket is attached by cables to the end of the boom and is pulled by the cables toward the dragline. In this manner, the bucket is filled with rocks and soil which are referred to as overburden. After the bucket is emptied, the process is repeated until the overburden is removed.

While removing the overburden, the dragline must be stationary because it cannot operate while it is moving itself to a new position and because the dragline must rotate on its own base. After the overburden has been removed, the coal may be mined by the dragline in the same way but such mining of the coal "is of questionable economic practice." As a matter of practical operation, this "dragline" could be walked a short distance, say one-fourth mile, economically, and even further under careful supervision, but any major transportation of the "dragline" requires that it be completely dismantled and reassembled at its new location. It cannot travel on a highway because it is too heavy and too big. Its locomotion and weight would destroy a highway. It cannot cross a bridge and it can only be moved on its own power cross country.

In all material respects, the dragline here is the same as the dragline in State v. Mine & Contractors Supply Co., 263 Ala. 630, 83 So.2d 425, hereinafter referred to as the Contractors case. The dragline in the Contractors case was smaller and could propel itself a little faster than the dragline in the instant case.

In the Contractors case, this court held that "the sale of the dragline was not subject to taxation because of the provisions of § 755(p), Title 51," Code 1940. As set out in the opinion in the Contractors case, § 755(p) provided that the "gross proceeds of the sale of machines used in mining" should be exempt from sales tax. § 789(p),

Title 51, provided that "Machines used in mining" should be exempt from use tax.

It is firmly established that the sales and use tax statutes are complementary and should be construed together, giving to each its separate field of operation. Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812.

It seems to be unquestioned that if the statutes had remained unchanged after the decision in the Contractors case, the draglines in both that case and the instant case would be, under that decision, exempt from sales tax and also exempt from use tax. The State asserts, however, that because of a change in the statutes, the instant dragline is an "automotive vehicle" under the sales and use tax statutes, and, therefore, under Burford-Toothaker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420, is subject to use tax, as an automotive vehicle, under Subsection (b) of § 788, Title 51, Code 1940.

The statutory change, relied on by the State, is found in Acts 105 and 106, approved April 14, 1956, Acts of Alabama, Special Sessions 1956, Vol. I, page 428 et seq.

Act 105 amended § 752, Title 51, by adding thereto the following paragraph:

"'(l) The term "automotive vehicle" shall include a power shovel, dragline, crawler, crawler crane, ditcher, or any similar machine which is self-propelled, in addition to self-propelled machines which are used primarily as instruments of conveyance.'"

When Act 105 became law, § 752 set out definitions which applied to the sales tax law. See: Act 100, approved August 18, 1959, 1959 Acts, Vol. I, page 298; Code of Alabama Recompiled 1958, Title 51, § 786 (2) (1).

Act 106 amended § 787, Title 51, Code 1940, which sets out definitions that apply to the use tax law. Act 106 added to § 787, the same definition of motor vehicle quoted above, which was added to § 752 by Act 105.

Acts 105 and 106 were both approved on the same day. Act 105 was approved at 10:40 A.M., and Act 106 was approved four minutes later at 10:44 A.M.

While the concepts with respect to the use tax are somewhat different from those of the sales tax, this court has held that the two laws are complementary one to the other and has construed them as being in pari materia; State v. Natco Corporation, 265 Ala. 184, 90 So.2d 385; and, therefore, we think Acts 105 and 106 should be construed together here.

Act 105 contains the following provision:

"'(3) It is hereby declared to be the legislative intent not to affect by the provisions of this section the exemptions specifically provided for by sections 755 and 789, as amended, of title 51, Code of Alabama 1940.'";

but Act 106 does not contain such a provision.

At the time here pertinent, § 755, Title 51, set out exemptions from sales tax, and § 789, Title 51, set out exemptions from use tax.

We are of opinion that when Acts 105 and 106 are construed together, the declaration of legislative intent not to affect the exemption provisions of § 789 must be read into both acts, although such declaration does not expressly appear in Act 106. To hold that the declaration in Act 105 does not apply to Act 106 would require us to hold that the legislature intended to preserve sales tax exemptions but did not intend to preserve use tax exemptions. We would further be required to hold that after having expressly declared an intent not to affect § 789 in Act 105, the lawmakers, in Act 106 approved four minutes later, by omitting such express declaration, repealed the declaration in Act 105 by implication.

**6**

Such a result is not reasonable when the two acts are construed together.

As we hereinabove undertook to show, the instant dragline was exempt from use tax under § 789(p), prior to passage of Act 106. We are of opinion that Act 106 did not affect this exemption.

The State contends that under the administrative interpretation of the sales and use tax laws, and the Burford-Toothaker case, supra, "automotive vehicles" are in a category all their own and should not be allowed the machine exemption, even when used for mining or manufacturing. As to that contention, we say here, as in the Contractors case,

> "We do not consider the question as to whether the opinion in the Burford-Toothaker case, supra, is authority for the propsition that the sale of an automotive vehicle is in all instances subject to the sales tax irrespective of the fact that it is admittedly used 'for mining, quarrying, compounding, processing or manufacturing tangible personal property,' nor do we express an opinion as to the soundness of such a conclusion if that is the holding." (263 Ala. at page 632, 83 So.2d at page 427)

We are of opinion and hold that the instant dragline was, for the tax period here involved, exempt from use tax because it was so exempt, by virtue of § 759 (p), Title 51, under the holding in State v. Mine & Contractors Supply Co., supra, at the time Acts 105 and 106 became law, and because said acts, construed together, expressly declare that the legislative intent is "not to affect * * * the exemptions specifically provided for by * * *." §§ 755 and 789 of Title 51.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.