233 So.2d 751

**EAST BREWTON MATERIALS, INC.**

**v.**

**STATE of Alabama, DEPARTMENT OF REVENUE.**

**3 Div. 11.**

Court of Civil Appeals of Alabama.

March 18, 1970.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen., and Counsel, Dept. of Revenue, Herbert I. Burson, Jr., Asst. Atty. Gen., and Asst. Counsel, Dept. of Revenue, for State.

Hugh M. Caffey, Jr., Brewton, for appellant.

**WRIGHT, Judge.**

East Brewton Materials, Inc., is a corporation organized under the laws of Alabama, with its place of business in East Brewton, Alabama. It is engaged in the business of selling sand, gravel and plant mix asphalt to customers in Alabama, and occasionally, in Florida. It is the appellant here, in a dispute with the Department of Revenue, State of Alabama, involving the assessment of delinquent sales tax.

The dispute arose when the Department of Revenue made an audit of the appellant's sales tax records and determined that additional tax was due by appellant for the period of August 1, 1964 through July 31, 1967. The appellant paid part of the additional amount claimed by the department but declined to pay tax on transportation charges set up in the audit. These charges resulted from instances when the appellant had delivered the merchandise it sold in its own trucks or in leased trucks. The controverted sum was later paid after final assessment was entered on February 6, 1968.

Upon payment of the controverted sums to the Department of Revenue, appellant filed an appeal from the payment under the provisions of Title 51, Section 140, Code of Alabama 1940. The appeal was filed in the Circuit Court of Escambia County, Alabama, In Equity, together with a bond conditioned to pay all costs. The matter was heard by the court sitting without a jury and a decree upholding the assessment was entered on the 27th day of June, 1969. It is from that decree that this appeal is taken.

The evidence disclosed that as a part of its business of selling sand, gravel and plant mix asphalt, appellant owned some trucks and from time to time leased other trucks for the purpose of delivering its products sold from its plant to the job site requested by its customers. Some of its sales were made at the plant, with the customer picking up the merchandise purchased. On rare occasions, deliveries were completed by contract or common carrier. The controverted assessments arose out of those instances in which deliveries were made to the customer, either by the use of appellant's own trucks or by trucks hired or leased for the particular job. The leases of other trucks used for delivery purposes were short term oral leases, with payment therefor made at the completion of a delivery and upon payment of the cost by the customer.

It was the practice of appellant in such sales to submit an invoice to the customer upon completion of delivery. The invoice was divided into price per ton for materials, and price per ton for transportation. Sales tax was charged only on the portion of the invoice covering price per ton for material. No sales tax was invoiced or charged for the price per ton for transportation. The total of price per ton for material, together with sales tax thereon, and price per ton for transportation represented the full charge to the customer.

It is appellant's contention that the transportation charges, as a separate price on the invoice, are not a part of the total sales price within the purview of the state

sales tax laws, as amended, codified in Title 51, Section 786(2–36), Code of Alabama 1940. It is insisted by appellant that the transportation charges are not a part of the gross proceeds of sale of its merchandise, as this term is defined in Title 51, Section 786(2) (f), Code of Alabama 1940.

Appellant further contends that Section (d) of the Department of Revenue's administrative ruling T18–011, promulgated in January, 1951, is an unreasonable interpretation of said Title 51, Section 786 (2) (f), and is contrary to the intent of the legislature in the passage of said section. Administrative ruling T18–011, though in effect since 1951, has never been challenged before or ruled upon by the appellate courts of the State. The application of Title 51, Section 786(2) (f) upon a factual situation, such as the case at hand, has not been decided by the appellate courts of this State.

The applicable portions of Title 51, Section 786(2) (f) are quoted as follows:

"The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property * * * including merchandise of any kind and character without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service costs, interest paid, or any other expenses whatsoever, and without any deductions on account of losses; * * *"

Section (d) of administrative ruling T18–011, Department of Revenue, is quoted as follows:

"In no case is the seller permitted to make separate charge for his own service in the delivery or transportation of the goods in such manner as to entitle the seller to deduct such service cost from the proceeds of sale; and no practice of invoicing or billing will entitle the seller to deduct from gross proceeds of sale any cost or expense, actual or estimated, in cases where the seller, by use of his own means of transportation, effects such delivery. The rule discussed in this paragraph does not apply to cases in which a third party or any independent carrier, common, contract or private, is employed to transport or deliver the goods for hire."

Appellant's assignments of error 1 through 5 are directed at the findings of the trial court in its decree. Appellant states in brief that these assignments are so closely interrelated that they are argued in bulk. Appellant further states that all the assignments of error attack the decree on the basis that it upheld administrative ruling T18–011 as a proper and valid interpretation of Section 786(2) (f) of Title 51. We are in agreement with appellant that such is the essence of the assigned errors. Therefore, a determination of the trial court's correctness in finding that regulation T18–011 is a proper interpretation of the intent of the legislature in the enactment of Section 786(2) (f), Title 51, Code of Alabama 1940, as amended, will be dispositive of the issues raised by this appeal.

For better understanding of the decree of the court below, we set out here, in full, all remaining of said decree after the subhead "Findings."

*"FINDINGS*

"The Appellant enters into contracts for the sale of sand, gravel and asphalt among other materials. The contracts are usually oral. A typical contract as delineated by Mr. L. L. Rainey, President, East Brewton Materials, Inc., a witness for the Appellant, is entered into as follows: A customer calls on the telephone and requests a quotation on asphalt plant mix. The customer states that he cannot pick up the mix in his own trucks so he requests the Appellant to deliver at an agreed site. The price of the asphalt mix is quoted as so many dollars per ton at the plant and a separate price is quoted for delivery, so many dollars per ton. The invoices carry

separate statements as to the cost of the merchandise and the cost of transportation. The Appellant has been collecting tax on the cost of the material but no tax on the transportation charges. The Appellant leases additional trucks to haul some of the asphalt mix. The lease is for an indefinite period. The Appellant collects the entire sum from the customer, that is, the total contract price including transportation charges. He, in turn, pays the lessor for the leased trucks at some later time, usually paying for a lease period involving numerous instances of the use of the leased trucks and for periods of weeks to months.

"The court finds that the mode of operation of the taxpayer places him within the purview of the taxing statute, within the purview of the term gross proceeds of sale as set out in section 786(2) (f), Title 51, Code of Alabama 1940, and within the purview of the regulation of the Department of Revenue, T18–011. The regulation was formally adopted in 1951 and the pertinent provisions have remained unchanged since that time. The regulation is an interpretation of the statute which is applicable in this case and the regulation is likewise applicable to the facts in this case. As a long standing regulation which has stood unchanged and unchallenged even though the legislature has met many times since its promulgation, it is entitled to great weight in reaching a conclusion in the matter. State v. Southern Electric Generating Company, [274 Ala. 668] 151 So.2d 216.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

"1. That the assessment for additional sales tax entered against the Appellant on February 6, 1968 in the amount of Nine hundred forty-five and 41/100 dollars ($945.41) for the period August 1, 1964 through July 31, 1967 is correct and is herewith affirmed.

"2. That the Appellant's prayer for the refund of the said sum of Nine hundred forty-five and 41/100 dollars ($945.41) is denied.

"That the costs of court are taxed against the Appellant for which execu may issue.

"DONE this 27th day of June, 1969.

> "/s/ Douglas S. Webb
> Circuit Judge –
> In Equity Sitting."

We concur in and adopt the findings of fact contained in the first paragraph of the above quoted portion of the decree below. From the evidence presented, we would add the further finding, that title to the materials sold by appellant did not pass, until reaching the delivery site in those cases in which delivery was effected by the use of appellant's trucks, either his own or leased. The president of appellant corporation testified that the materials were subject to rejection by the customer if not up to specifications when delivered to the job site, and that loss or damage while in transit was the responsibility of the corporation.

In discussing the meaning of Section 786(2) (f), and its interpretation by administrative ruling T18–011, we must begin with certain principles established by the Supreme Court of this state. The first is that it is an established rule of statutory construction that when a tax statute has been construed by the highest officials charged with the duty of administering the tax laws, such construction should be given favorable consideration by the courts, especially if such construction has stood unchallenged for a considerable time. State v. Birmingham Rail & Locomotive Co., 259 Ala. 443, 66 So.2d 884; State v. Southern Electric Generating Co., 274 Ala. 668, 151 So.2d 216; State v. Helburn Co., 269 Ala. 164, 111 So.2d 912.

This principle is particularly applicable in this case, since the administrative ruling in question has been in effect for nearly nineteen years, and, admittedly, has never before been challenged in the courts. The weight to be given by us to the above principle, is substantially in-

creased when it is considered that the legislative history of Section 786(2) (f) indicates it has been either totally reenacted, or amended some seven times since the promulgation of the administrative interpretation.

It was stated in State v. H. M. Hobbie Grocery Co., 225 Ala. 151, 142 So. 46, "The re-enactment without change of a statute which has been given a uniform construction by the administrative department 'may be treated as legislative approval of the departmental construction of the statute, quite as persuasive as the re-enactment of a statute, which has been judicially construed.' " The above quotation was cited in the case of State v. Southern Electric Generating Co., supra.

While keeping in mind the above principle and rule, we must consider it in the light of the statement made by the court in the case of State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824, " * * * This rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a different construction is required by the language of the act." We are fully mindful that the burden of interpreting the real intention of the legislature in the enactment of a statute lies upon the courts.

We now assume that burden, enlightened by prior decisions with some degree of precedent.

In order to determine the legislative intent in the enactment of the sales tax levying statute, we must first look to the definition sections which were enacted by the legislature coincidental with the levying statute itself. These sections undertake to define the meaning of the terms and phrases used therein.

It is the term "gross proceeds of sales" which must be examined to determine if it was the legislative intent that the state sales tax should be imposed on the total invoice price of appellant's sales, including charges for the delivery of materials.

It is insisted by appellant that the key to the legislative intent and purpose, is the phrase "sale of tangible personal property." The phrase tangible personal property is used in both the sales and use tax statutes. We inject the use tax statutes here because our courts have held that the sales and use tax statutes are complementary one to the other, are in pari materia, and should be construed together, even though each has its separate field of operation. State v. Twin Seam Mining Co., Inc., 274 Ala. 3, 145 So.2d 177; State v. Bay Towing & Dredging Co., 265 Ala. 282, 90 So.2d 743; State v. Natco Corp., 265 Ala. 184, 90 So.2d 385. Since the two acts are in pari materia, and are construed together, it may be that an examination of one may furnish information as to legislative intent not made clear in the other.

Appellant insists that the phrase "sale of tangible personal property" constitutes the taxable incident and that neither the sales nor use tax acts have application to the sale of intangible personal services. Of course, the intangible personal service referred to by appellant is the act of providing delivery for appellant's materials. Standing alone, this phrase would appear to support appellant's position. However, Section 786(2) (f), quoted hereinbefore, does not leave the term tangible personal property standing alone. The term is amplified by words preceding and following. We quote again from Section 786 (2) (f) "The term 'gross proceeds of sales' means the *value proceeding or accruing from* the sale of tangible personal property * * *." (Emphasis ours). From the quotation we find that the narrow or strict meaning of tangible personal property is not an element of the section. The purpose of the section is to define "gross proceeds of sales." It states that "gross proceeds of sales" means the value proceeding or accruing from the sale of tangible personal property. The section then proceeds beyond the bare statement of meaning, and pro-

ceeds to specifically state elements involved in the value proceeding or accruing from the sale of tangible personal property. As elements of value proceeding or accruing from the sale of tangible personal property there is included, (a) merchandise of any kind and character without deduction for cost; (b) cost of materials used; (c) labor or service cost; (d) Interest paid; (e) without deductions on account of losses; and, most importantly to the issues in this case, (f) or any other expenses whatsoever. We must assume that it was from this last inclusion in the statute that administrative ruling T18–011 sprang.

We have previously stated that since the sales and use tax statutes are considered complementary, and are construed together, an examination of the terms and definitions of one might be of assistance in examining comparable terms and definitions of the other for the purpose of determining legislative intent. Thus, we turn to the definition section of the use tax act found in Title 51, Section 787, (j) where it is stated, "The term 'sales price' means the total amount for which tangible personal property is sold, including any services (including transportation) that are a part of the sale, * * * "

We see little technical difference between the terms "gross proceeds of sales" as used in the sales tax act, and the term "sales price" as used in the use tax act. There appears to us to be no tangible difference between "the total amount for which tangible personal property is sold" and "the value proceeding or accruing from the sale of tangible personal property." Within the quoted use tax section the legislature specifically put an inclusion within an inclusion when it said "including any services (including transportation) that are a part of the sale,". In the quoted sales tax section the inclusion within an inclusion found in the use tax section was not specifically set out, however, there was an inclusion covering service costs and any other expenses whatsoever. Since the legislature specifically directed that trans-

portation charges be included as a part of the sales price for which tangible personal property is sold for the purpose of levying a use tax, we consider it a fair and reasonable interpretation that such charges should be included as a part of the value proceeding or accruing from the sale of tangible personal property in the application of the sales tax. When it was provided in Section 786(2) (f) that the value proceeding or accruing from the sale of tangible personal property should include "any other expenses whatsoever," we are of the opinion that the legislature intended thereby that sales tax be charged upon the total invoice price, including transportation charges incident to delivery of the material sold to a customer, when such transportation was provided by the seller, not by common carrier, and the sale was not completed or title transferred until delivery to the customer.

■ We further hold, in agreement with the court below, that administrative ruling T18–011 was a fair and reasonable interpretation of Title 51, Section 786(2) (f); and was within the statutory authority of the State Department of Revenue.

Appellant in brief has directed our attention to the case of State v. Natco Corp., 265 Ala. 184, 90 So.2d 385, and states that there was a similar factual situation involved in that case as the instant case before this Court. The Natco case dealt with interpretation of the use tax section which we have previously quoted from and discussed hereinabove. There was a similarity in facts to the instant case, in that the invoice submitted to the purchaser indicated separate charges for the purchase of the property and the cost of transportation. There the similarity ends.

Natco raised the question as to whether a use tax was chargeable on the total invoice price, including transportation, when such transportation was arranged by the out of state seller and shipper as a convenience at the point of origin. Such transportation was provided by common

carrier and not by vehicles provided by the seller. The sale was completed at the point of origin and title passed to the buyer. The Supreme Court held that under such conditions, the sales price did not include the cost of transportation, and the cost of transportation was not taxable for use tax purposes. We find that the *Natco* case does not support appellant's position here, but rather supports the provision of administrative ruling T18–011, in that, the ruling specifically excludes from its application transportation charges rendered by a third party or a common carrier, even though such charges are invoiced to and paid by the customer.

There was some effort in the testimony of appellant to bring itself within the provisions of the *Natco* case by stating that the material prices quoted to customer were F.O.B. or plant site prices. However, subsequent testimony of the president of appellant repudiated the fact the sale was actually F.O.B. plant site, but rather that title did not pass to the customer until delivery was effected. The Court stated in *Natco*, "It is the general rule of law that where the agreement is to sell goods F.O.B. a designated place, such place will ordinarily be regarded as the place of delivery. Sanford Service Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856. And further, the general rule is that delivery of personal property by the seller to a common carrier to be conveyed to the purchaser is a delivery to the purchaser and the title to the property vests in the purchaser immediately upon its delivery to the carrier."

In spite of the invoicing methods of appellant, it is clear that the providing of transportation was one of the acts necessary to be performed to make appellant's product marketable at the point of sale. The amounts paid by the customer for such transportation became a part of the actual cost of sale of the product in its marketable condition. In those instances in which delivery was required by the customer, it was necessary to the sale of appellant's product. Appellant, was in effect, providing a container for delivery. In the transactions presented on this appeal, appellant's cost of delivery of merchandise to the job site of his customers was a part of the "gross proceeds of sales,"—a portion of the value proceeding or accruing from the sale of tangible personal property.

The matters raised by assignments of error 6 and 7 are considered to be settled by the holding of this opinion without further comment.

We find no error in the decree of the trial court and said decree is hereby affirmed.

Affirmed.