740 So.2d 1108 (1999)
PILERI INDUSTRIES, INC.
v.
CONSOLIDATED INDUSTRIES, INC.
2971377.
Court of Civil Appeals of Alabama.
September 10, 1999.
*1109 Brian Dowling, Dothan, for appellant.
Submiteed on appellant's brief only.
YATES, Judge.
Pileri Industries, Inc., sued Consolidated Industries, Inc., alleging, in Count One, that Consolidated owed $45,259.25 on a stated account and, in Count Two, that Consolidated had breached a contract. Following a nonjury trial, the court found in favor of Consolidated. We affirm.
Where a trial court's judgment in a nonjury case is based on ore tenus testimony, the court's findings of fact are presumed correct, and the judgment will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. McDonald v. Schwartz, 706 So.2d 1230 (Ala.Civ.App.1997).
On April 17, 1991, the parties agreed that Pileri would produce parts for 6,500 battery assemblies and that Consolidated would purchase the parts for $228,465. In that document labeled "Purchase Order 8691," under the section "Ship Via" is typed "Best Way." Other terms agreed to were either marked or initialed. The section labeled "F.O.B." is blank. Mr. Pileri, as owner, testified at trial that some of the shipping invoices related to Purchase Order 8691 that Pileri sent to Consolidated contained the wording "F.O.B. Farmingdale," Pileri's place of business. (A contract with the term "F.O.B. Farming-dale/New York" would be a "shipping contract," and that term would relieve Pileri of the risk of loss during shipment.) The "F.O.B" term on the other invoices was left blank. None of those invoices were introduced into evidence. Moreover, Mr. Pileri wrote a letter on February 12, 1992, which was admitted into evidence, wherein he specifically "void[ed] any prior agreements" and terminated Purchase Order 8691.
On March 30, 1992, the parties made a new agreement whereby the seller would sell the parts completed or in progress, for $65,075.25. The invoice relating to those parts shipped on November 4, 1992, pursuant to the March 30, 1992, agreement, does not contain an "F.O.B." term. The bill of lading from November 4, 1992, indicates only that Pileri shipped some items to Consolidated. It does not indicate whether the contract was a "shipping contract" or a "destination contract." In other words, it does not state "F.O.B. Farmingdale" (Pileri's place of business) or "F.O.B. Huntsville" (Consolidated's place of business). Pileri sued Consolidated, attempting to recover money for the parts shipped on November 4, 1992.
Pileri raises two issues on appeal: (1) "Did the trial court err in ruling against the seller of goods when an account stated was uncontested and supported by an affidavit?" and (2) "When a U.C.C. transaction is clear or is made clear by the parties' dealings, is seller entitled to judgment?"
Pileri argues that because its complaint contained an uncontested affidavit, it was entitled to a judgment in its favor, pursuant to § 12-21-111, Ala.Code 1975. First, we note that there are deficiencies in Pileri's brief. Throughout, Pileri's brief cites headnotes from West's Southern Reporter. A headnote is not legal authority; rather, it is a publisher's interpretation of what the particular court stated, and it should not be relied upon to convey the precise case holding. A headnote is intended solely for the convenience *1110 of the public and the Bar as a research and indexing aid.
Second, Pileri argues that Mr. Pileri's uncontested affidavit filed in support of the stated account entitles it to a judgment based on § 12-21-111. However, § 12-21-111 requires that the affidavit be notarized, and Mr. Pileri's affidavit was not.
Third, Pileri cites Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co., 608 So.2d 358 (Ala.1992), and Merchant's Printers, Inc. v. Vulcan Publications, Inc., 597 So.2d 1322 (Ala.1992), to support its argument regarding the uncontested affidavit. It cites Rose Manor for the proposition that the "Seller's uncontested affidavit of account stated was sufficient for judgment." This is an incorrect statement of the holding in that case. In Rose Manor, the plaintiff was entitled to a summary judgment where the defendant did not notify the plaintiff that the account should be closed or that another entity was operating the nursing home that had previously been operated by the defendant. The plaintiff continued to supply goods on credit and was not paid. The supreme court does not cite § 12-21-111 in Rose Manor. Further, the defendant in Rose Manor did file an affidavit to counter the plaintiffs affidavit filed with its summary-judgment motion. However, it was the defendant's failure to notify the plaintiff that the account should be closed or that another entity was operating the nursing home that entitled the plaintiff to a summary judgmentnot the filing of an uncontested affidavit, as Pileri suggests.
In Merchant's Printers, the issue was whether a plaintiff is entitled to a summary judgment when it makes a prima facie showing of a debt owed to it by attaching to the complaint a verified statement of account, as permitted by § 12-21-111, and the defendant fails to file a counter-affidavit as required by that statute. The supreme court held that § 12-21-111 is an evidentiary rule and that the prima facie case may be rebutted by other means. Pileri disingenuously cites Merchant's for the proposition that "the defendant did not file an affidavit stating that it disputed the account, in whole or in part, so the trial court had to consider Merchant's account as `competent evidence of the correctness' of the account." The Merchant's court clearly stated:
"We cannot agree with the argument that Merchant's was entitled to a summary judgment, as a matter of law, because of the failure of Vulcan to file a counteraffidavit within 30 days after Merchant's filed its complaint containing the verified account. Section 12-21-111[,] upon which Merchant's strongly relies, is merely an evidentiary rule."
597 So.2d at 1324. Pileri's citation of Merchant's Printers does not support its argument, and its argument misstates the law.
Although Pileri does cite cases and a statute, each of these authorities stands only for general propositions of law and none is cited in such a way as to support any contentions of error by the trial court. See Rule 28(a)(5), Ala. R.App. P. A lawyer is obligated to read every case cited in his brief, to be certain that it stands for the proposition asserted. It is not the job of the appellate courts to do a party's legal research. Spradlin v. Birmingham Airport Auth., 613 So.2d 347 (Ala.1993). Nor is it the function of the appellate courts to "make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument." Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994).
Pileri's second argument is that the November 4, 1992, agreement was a "shipping contract," that it delivered the goods to the carrier, and, therefore, that it is entitled to a judgment. With a shipping contract, the risk of loss is shifted from the seller to the buyer when the seller delivers the goods to the carrier. § 7-2-319(a), Ala. Code 1975. With a destination contract, the seller is required to deliver the goods *1111 to a particular destination; such a contract imposes the risk of loss on the seller until the buyer actually receives the goods. § 7-2-319(b).
Again, Pileri's brief falls short in its arguments. Pileri cites headnotes as authority; as discussed above, it is improper to do that. Pileri goes on to make bare assertions and to cite general propositions of law. Pileri cites State Dep't of Revenue v. Dixie Tool & Die Co., 537 So.2d 921 (Ala.Civ.App.1987), reversed and remanded, 537 So.2d 923 (Ala.1988),[1] for the proposition that "Both appellate courts agree a Seller completes its performance and title passes when goods are delivered to a common carrier, because that starts a continuous flow to Buyer." Dixie Tool was a sales-tax case dealing with interstate commerce and the question when certain sales are exempt from state taxation. It does not stand for the proposition asserted by Pileri.
Pileri cites State v. Natco Corp., 265 Ala. 184, 90 So.2d 385 (1956), for the proposition that "The general rule is that delivery by seller to common carrier is delivery to purchaser and title passes, especially where buyer pays shipping." Natco was a tax case and the issue was whether the seller should include transportation charges in computing its sales-tax liability. The supreme court held:
"[I]f the seller contracts to sell tangible personal property F.O.B. origin [i.e., a shipping contract] the title to the property passing at such point to the buyer and the buyer pays the transportation charges, then the transportation charges are rendered to the buyer and are not a part of the selling price of the vendor."
Id., 265 Ala. at 188, 90 So.2d at 389 (emphasis added). Pileri again fails to cite authority to support its argument that the November 4, 1992, agreement was, in fact, a shipping contract.
We note that even if Pileri's brief was supported by proper arguments, as is required by Rule 28, Ala. R.App. P., its substantive claim is without merit, because it failed to prove that the November 4, 1992, agreement was indeed a shipping contract. We disagree with Pileri's suggestion that Consolidated did not present any evidence to dispute Mr. Pileri's characterization of the agreement as a shipping contract. Consolidated cross-examined Mr. Pileri as to whether the November 4, 1992, invoice contained an "F.O.B. New York" term; Mr. Pileri admitted it did not. Additionally, Pileri cannot rely on Mr. Pileri's testimony that it was "standard procedure" among Government contractors that, unless otherwise agreed, the contract was a shipping contract. Mr. Pileri was not proffered as an expert in Government contracts. Also, there was no testimony as to Mr. Pileri's qualifications as an expert, as required under Rule 702, Ala. R. Evid.
Contrary to the dissent, neither Mr. Pileri's unverified affidavit nor his testimony at trial proved Pileri's claim. There were factual issues as to whether Pileri proved that this was indeed a shipping contract, that all Government contracts are shipping contracts, if not otherwise stated, and whether Consolidated actually received the shipment. First, Mr. Pileri testified at trial that some of the shipping invoices that he had sent to Consolidated regarding Purchase Order 8691 contained the wording "F.O.B. Farmingdale" (Pileri's place of business). The "F.O.B." term on the other invoices was left blank. None of these invoices were introduced into evidence. Moreover, Mr. Pileri wrote a letter on February 12, 1992, which was admitted into evidence, wherein he specifically "void[ed] any prior agreements" and terminated Purchase Order 8691.
On March 30, 1992, the parties made a new agreement. The November 4, 1992, invoice relating to the new agreement does *1112 not contain an "F.O.B." term. The November 4, 1992, bill of lading indicates only that Pileri shipped some items to Consolidated. It does not indicate whether the contract was a shipping contract or was a destination contract. The dissent cannot rely on Mr. Pileri's testimony that the invoices arising out of Purchase Order 8691 (which were never admitted into evidence) support its suggestion that the goods shipped on November 4, 1992, were shipped pursuant to a shipping contract, because there was a new agreement between the parties and that new agreement was not a "shipping contract."
As stated earlier, Mr. Pileri's testimony regarding the "standard procedure" of all Government contractors, that unless otherwise agreed, the contract was a shipping contract, does not support Pileri's claim. The dissent cites General Motors Corp. v. Johnston, 592 So.2d 1054 (Ala. 1992), for the proposition that "a party who makes no objection to the qualifications of a witness as an expert or who does not move to strike the witness's testimony based on a lack of expertise waives judicial review of this issue." 740 So.2d at 1115. Although this is a correct statement of law, it is inapplicable in the present case. In Johnston, the witness was called as an expert in mechanical engineering, and he testified to his qualifications as an expert in that field. General Motors did not object to his qualifications at trial and, therefore, could not raise that issue on appeal. In the present case, Mr. Pileri was not called as an expert in Government contracts, nor was there any testimony as to his qualifications as an expert, as required under Rule 702, Ala. R. Evid.
As to the issue whether Consolidated actually received the shipment, the testimony from the shipping and receiving clerk for Consolidated was that when trucks came in with a shipment he would sign for the product, write a receiving report, and take the report to the inspection department. He further testified that the truck driver who was delivering any items was "always" required to sign and to take a copy of the receiving report with him after he delivered his product. The clerk was asked, "Do you recall ever in your tenure at Consolidated Industries a truck driver who would allow material to be dropped off without having you sign for it?" His response was "No." Pileri, as the plaintiff, had the burden of proof; it presented no record from the trucking company indicating that Consolidated had received the items and no record from Consolidated indicating that it had received the items. It merely presented an invoice showing that some items were shipped from Pileri, but no evidence showing that Consolidated received them.
We note that much of the authority relied upon by the dissent is from other jurisdictions. Although such authority can be persuasive, it is not binding on this court.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.
CRAWLEY, Judge, dissenting.
I respectfully dissent because I believe that the trial court erred as a matter of law by entering the judgment for Consolidated.
The majority holds that Pileri was not entitled to a judgment on an account stated because its affidavit was not notarized pursuant to § 12-21-111, Ala.Code 1975. Pileri, however, was not required to prove its case by relying on § 12-21-111. That statute, as the majority points out, merely states an evidentiary rule or a proof "shortcut." See Merchant's Printers, Inc. v. Vulcan Publications, Inc., 597 So.2d 1322 (Ala.1992). In University of South Alabama v. Bracy, 466 So.2d 148, 150 (Ala. Civ.App.1985), this court stated:

*1113 "A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. The debtor's admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within [a] reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account."
(Citations omitted.) (Quoted with approval in Miller v. Chapman, 674 So.2d 71, 74 (Ala.1995).) Even without considering Mr. Pileri's affidavit, it is clear that Pileri proved a prima facie case of an account stated, by presenting the following undisputed evidence: On October 16, 1991, Consolidated wrote Pileri, stating that it was terminating the contract and would pay all outstanding invoices within five weeks. Consolidated requested from Pileri a "breakdown of what [it] owed," and Pileri responded, by letter of February 12, 1992, stating that Consolidated owed $65,075.25. Mr. Pileri testified that that figure represented the value of the goods that had already been manufactured "or were in the works" when Consolidated terminated the purchase order. On March 30, 1992, Consolidated wrote Pileri, stating that it "agree[d] to start paying ... $1000 per week on the $65,075.25 balance."
Consolidated's defense was, apparently, failure of consideration, i.e., that it did not receive (and, therefore, that it was not required to pay for) a shipment Pileri sent on November 4, 1992. There are two problems with that defense. First, failure of consideration is an affirmative defense that is waived if not pleaded. See Rule 8(c), Ala. R. Civ. P.; Plymel v. B.W. Projects, Inc., 632 So.2d 453 (Ala. 1993). Consolidated failed to plead the defense. Second, Consolidated failed to offer any evidence to support the defense. Although Consolidated's counsel argued that Consolidated did not receive the November 4 shipment, Consolidated presented no evidence to that effect. Consolidated's only witness, a former employee in Consolidated's shipping and receiving department, testified merely that it was his practice to log all incoming materials on a receiving report. He was not asked, and he did not testify, about the contents of any receiving reports for the period in question. He was not asked, and he did not testify, that the buyer had failed to receive a consignment shipped by the seller on November 4.
Moreover, even if Consolidated had established that it never received the November 4 shipment, it would not thereby have proved that it was relieved of its contractual duty to pay for the goods. Under § 2-509(1) of the Uniform Commercial Code ("U.C.C.") (§ 7-2-509(1), Ala.Code 1975), a determination of whether the seller or the buyer bears the risk of loss of goods in transit depends upon whether the agreement of sale is a "shipment" contract or is a "destination" contract. See Pestana v. Karinol Corp., 367 So.2d 1096, 1099 (Fla.Dist.Ct.App.1979). See generally William H. Danne, Jr., Annotation, "Who Bears Risk of Loss of Goods Under U.C.C. §§ 2-509, 2-510," 66 A.L.R.3d 145 (1975).
"[U]nder [Article 2 of the Uniform Commercial Code] the `shipment' contract is regarded as the normal one and the `destination' contract as the variant type." Section § 7-2-503 (Comment 5), Ala.Code 1975.
"Both of these types of contracts usually employ mercantile terms or `trade symbols' specifying the requirements for delivery, such as `F.O.B. the place of shipment,' [see § 7-2-319(1)(a), Ala.Code 1975,] or `F.O.B. the place of destination,' [see § 7-2-319(1)(b), Ala.Code 1975]. Where no such term is employed and there has been no specific agreement otherwise, the contract for the transportation of goods by carrier will *1114 be presumed to be a shipping contract. See 1A Uniform Laws Annot., U.C.C. comment 5 to § 2-503 (1976); J. White & R. Summers, Uniform Commercial Code § 5-2, at 142-143 (1972)...."
Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 158, 376 N.E.2d 548, 553 (1978) (emphasis added). Unlike the majority of this court, I believe that Pileri made a prima facie showing that the contract was a shipment contract and that Consolidated presented no evidence to the contrary. As the main opinion points out, I have, in the absence of Alabama case law on the subject, turned to the construction of the relevant U.C.C. sections by some of our sister states.
"In interpreting the UCC we must keep in mind the legislative mandate that it is to be ... applied to promote its underlying purposes and policies, one of which is to make uniform the law among the various jurisdictions. Tit. 7A, § 1-102, Code of Alabama 1940, Recompiled 1958."
Lightfoot v. Harris Trust & Sav. Bank, 357 So.2d 654, 655 (Ala.1978).
"It is axiomatic that a purpose in enacting uniform laws is to achieve uniformity, not uniqueness. While opinions by courts of sister states construing a uniform act are not binding on this court, [I am] mindful that the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions. This court should strive to maintain the standardization of construction of uniform acts to carry out the legislative intent of uniformity. This does not mean that this court [should] blindly follow decisions of other states interpreting uniform acts, but this court [should] seriously consider the constructions given to comparable statutes in other jurisdictions and [should] espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state."
Holiday Inns, Inc. v. Olsen, 692 S.W.2d 850, 853 (Tenn.1985) (emphasis added). "[B]y conforming [our] interpretation of [the U.C.C.] to that of our sister states, we are, in fact maintaining the standardization of construction of uniform acts and, in that way, carrying out the legislative intent of uniformity." Blitz v. Beth Isaac Adas Israel Congregation, 352 Md. 31, 43-44, 720 A.2d 912, 918 (Ct.App.1998) (construing Maryland's version of the Uniform Arbitration Act to be in consonance with other states' construction of that Act).
At trial, Pileri introduced a bill of lading indicating that it delivered the goods on November 4, 1992, to Roadway Express for shipment to Consolidated. Mr. Pileri testified that the agreement was a "shipping contract" that required Consolidated to pay the shipping costs and to assume the risk of loss once Pileri had delivered the goods to a common carrier. Pileri stated that it made 14 shipments to Consolidated. It introduced 10 shipping invoices, 6 of which were marked "F.O.B. Farmingdale," Pileri's place of business. For the other four shipping invoices, the "F.O.B." term was left blank. Although those invoices pertained to a prior agreement of the parties, rather than to the parties' new agreement made on March 30, 1992, they are relevant because they indicate a course of dealing between Pileri and Consolidated. See Ex parte McClarty Constr. & Equip. Co., 428 So.2d 629, 634 (Ala.1983). In the absence of any evidence from Consolidated indicating that the agreement was a "destination contract," Pileri was entitled to rely on the presumption established in § 7-2-503, Ala.Code 1975 (Comment 5), that the agreement was a "shipping contract." See Ladex Corp. v. Transportes Aereos Nacionales, S.A., 476 So.2d 763, 765 (Fla.Dist.Ct.App.1985). Here, however, Pileri did more than merely rely on the presumption. Mr. Pileri testified that the "standard procedure" among Government contractors was that, unless otherwise agreed between the parties, the contract was "an F.O.B. shipping contract." Consolidated did not object to *1115 Mr. Pileri's testimony on this point. A party who makes no objection to the qualifications of a witness as an expert or who does not move to strike the witness's testimony, based on a lack of expertise, waives judicial review of this issue. General Motors Corp. v. Johnston, 592 So.2d 1054, 1057 (Ala.1992).
Pileri established Consolidated's liability on an account stated; it also established a breach of a shipment contract by Consolidated. On the other hand, Consolidated presented no evidence either challenging the accuracy of the stated account or disputing Pileri's characterization of the agreement as a shipment contract. Consolidated neither pleaded nor proved the affirmative defense of failure of consideration. The judgment for Consolidated is erroneous as a matter of law and is due to be reversed.
THOMPSON, J., concurs.
NOTES
[1] In citing this case, Pileri failed to state that the supreme court had reversed the judgment of this court.