367 So.2d 1096 (1979)
Pedro J. PESTANA, Personal Representative of the Estate of Nahim Amar B., Deceased, Appellant,
v.
KARINOL CORPORATION et al., Appellees.
No. 78-626.
District Court of Appeal of Florida, Third District.
February 27, 1979.
*1097 Rohan & Rohan and Laurence J. Rohan, Miami, for appellant.
Litman & Michaels and Marvin D. Michaels, Coral Gables, for appellees.
Before HUBBART, KEHOE and SCHWARTZ, JJ.
HUBBART, Judge.
This is an action for damages based on a contract for the sale of goods. The defendant seller and others prevailed in this action after a non-jury trial in the Circuit Court for the Eleventh Judicial Circuit of Florida. The plaintiff buyer appeals.
The central issue presented for review is whether a contract for the sale of goods, which stipulates the place where the goods sold are to be sent by carrier but contains (a) no explicit provisions allocating the risk of loss while the goods are in the possession of the carrier and (b) no delivery terms such as F.O.B. place of destination, is a shipment contract or a destination contract under the Uniform Commercial Code. We hold that such a contract, without more, constitutes a shipment contract wherein the risk of loss passes to the buyer when the seller duly delivers the goods to the carrier under a reasonable contract of carriage for shipment to the buyer. Accordingly, we affirm.

A
The critical facts of this case are substantially undisputed. On March 4, 1975, Nahim Amar B. [the plaintiff Pedro P. Pestana's decedent herein] who was a resident of Mexico entered into a contract through his authorized representative with the Karinol *1098 Corporation [the defendant herein] which is an exporting company licensed to do business in Florida and operating out of Miami. The terms of this contract were embodied in a one page invoice written in Spanish and prepared by the defendant Karinol. By the terms of this contract, the plaintiff's Amar agreed to purchase 64 electronic watches from the defendant Karinol for $6,006. A notation was printed at the bottom of the contract which, translated into English, reads as follows: "Please send the merchandise in cardboard boxes duly strapped with metal bands via air parcel post to Chetumal. Documents to Banco de Commercio De Quintano Roo S.A." There were no provisions in the contract which specifically allocated the risk of loss on the goods sold while in the possession of the carrier; there were also no F.O.B., F.A.S., C.I.F. or C & F terms contained in the contract. See §§ 672.319, 672.320, Fla. Stat.(1977). A 25% downpayment on the purchase price of the goods sold was made prior to shipment.
On April 11, 1975, there is sufficient evidence, although disputed, that the defendant Karinol delivered the watches in two cartons to its agent American International Freight Forwarders, Inc. [the second defendant herein] for forwarding to the plaintiff's decedent Amar. The defendant American insured the two cartons with Fidelity & Casualty Company of New York [the third defendant herein] naming the defendant Karinol as the insured. The defendant American as freight forwarder strapped the cartons in question with metal bands and delivered them to TACA International Airlines consigned to one Bernard Smith, a representative of the plaintiff's decedent, in Belize City, Belize, Central America. The shipment was arranged by Karinol in this manner in accord with a prior understanding between the parties as there were no direct flights from Miami, Florida to Chetumal, Mexico. Mr. Smith was to take custody of the goods on behalf of the plaintiff's decedent in Belize and arrange for their transport by truck to the plaintiff's decedent Amar in Chetumal, Mexico.
On April 15, 1975, the cartons arrived by air in Belize City and were stored by the airline in the customs and air freight cargo room. Mr. Smith was duly notified and thereupon the plaintiff's decedent made payment on the balance due under the contract to the defendant Karinol. On May 2, 1975, Mr. Smith took custody of the cartons after a certain delay was experienced in transferring the cartons to a customs warehouse. Either on that day or shortly thereafter, the cartons were opened by Mr. Smith and customs officials as was required for clearance prior to the truck shipment to Chetumal, Mexico. There were no watches contained in the cartons. The defendant Karinol and its insurance carrier the defendant Fidelity were duly notified, but both eventually refused to make good on the loss.
The plaintiff Pedro P. Pestana, as representative of the Estate of Nahim Amar B., deceased, filed suit against the defendant Karinol as the seller, the defendant American as Karinol's agent freight forwarder, and the defendant Fidelity as the defendant Karinol's insurer. The complaint alleged that the defendant Karinol entered into a contract to ship merchandise from Miami, Florida to Chetumal, Mexico with the plaintiff's decedent, that the defendant American as freight forwarder and agent of the defendant Karinol accepted shipment of such merchandise, that the merchandise was lost, stolen or misplaced while in the care and custody of the defendant Karinol and the defendant American, that the defendants Karinol and American failed to make delivery to the plaintiff's decedent at Chetumal, Mexico, and that there existed a liability policy with the defendant Fidelity for the benefit of the plaintiff's decedent. The complaint sought damages together with court costs and reasonable attorneys fees. All the defendants duly filed answers to the complaint wherein liability was denied. The defendant Karinol filed a cross-complaint against the defendant American. The trial court after a non-jury trial found *1099 for all of the defendants in this cause. This appeal follows.[1]

B
There are two types of sales contracts under Florida's Uniform Commercial Code wherein a carrier is used to transport the goods sold: a shipment contract and a destination contract. A shipment contract is considered the normal contract in which the seller is required to send the subject goods by carrier to the buyer but is not required to guarantee delivery thereof at a particular destination. Under a shipment contract, the seller, unless otherwise agreed, must: (1) put the goods sold in the possession of a carrier and make a contract for their transportation as may be reasonable having regard for the nature of the goods and other attendant circumstances, (2) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of the trade, and (3) promptly notify the buyer of the shipment. On a shipment contract, the risk of loss passes to the buyer when the goods sold are duly delivered to the carrier for shipment to the buyer. §§ 672.503 (Official U.C.C. comment 5), 672.504, 672.509(1), Fla. Stat.(1977); Electric Regulator Corp. v. Sterling Extruder Corp., 280 F. Supp. 550, 557 (D.C.Conn. 1968); Eberhard Manufacturing Co. v. Brown, 61 Mich. App. 268, 232 N.W.2d 378 (1975).
A destination contract, on the other hand, is considered the variant contract in which the seller specifically agrees to deliver the goods sold to the buyer at a particular destination and to bear the risk of loss of the goods until tender of delivery. This can be accomplished by express provision in the sales contract to that effect or by the use of delivery terms such as F.O.B. (place of destination). Under a destination contract, the seller is required to tender delivery of the goods sold to the buyer at the place of destination. The risk of loss under such a contract passes to the buyer when the goods sold are duly tendered to the buyer at the place of destination while in the possession of the carrier so as to enable the buyer to take delivery. The parties must explicitly agree to a destination contract; otherwise the contract will be considered a shipment contract. §§ 672.319(1)(b), 672.503 (Official U.C.C. comment 5), 672.509(1), Fla. Stat.(1977); Electric Regulator Corp. v. Sterling Extruder Corp., 280 F. Supp. 550, 557 (D.C.Conn. 1968); Eberhard Manufacturing Corp. v. Brown, 61 Mich. App. 268, 232 N.W.2d 378 (1975); White and Summers, Uniform Commercial Code 140-43 (1972).
Where the risk of loss falls on the seller at the time the goods sold are lost or destroyed, the seller is liable in damages to the buyer for non-delivery unless the seller tenders a performance in replacement for the lost or destroyed goods. On the other hand, where the risk of loss falls on the buyer at the time the goods sold are lost or destroyed, the buyer is liable to the seller for the purchase price of the goods sold. White and Summers, Uniform Commercial Code 134 (1972).

C
In the instant case, we deal with the normal shipment contract involving the sale of goods. The defendant Karinol pursuant to this contract agreed to send the goods sold, a shipment of watches, to the plaintiff's decedent in Chetumal, Mexico. There was no specific provision in the contract between the parties which allocated the risk of loss on the goods sold while in transit. In addition, there were no delivery terms such as F.O.B. Chetumal contained in the contract.
All agree that there is sufficient evidence that the defendant Karinol performed its obligations as a seller under the Uniform Commercial Code if this contract is considered a shipment contract. Karinol put *1100 the goods sold in the possession of a carrier and made a contract for the goods safe transportation to the plaintiff's decedent; Karinol also promptly notified the plaintiff's decedent of the shipment and tendered to said party the necessary documents to obtain possession of the goods sold.
The plaintiff Pestana contends, however, that the contract herein is a destination contract in which the risk of loss on the goods sold did not pass until delivery on such goods had been tendered to him at Chetumal, Mexico  an event which never occurred. He relies for this position on the notation at the bottom of the contract between the parties which provides that the goods were to be sent to Chetumal, Mexico. We cannot agree. A "send to" or "ship to" term is a part of every contract involving the sale of goods where carriage is contemplated and has no significance in determining whether the contract is a shipment or destination contract for risk of loss purposes. Electric Regulator Corp. v. Sterling Extruder Corp., 280 F. Supp. 550, 557-58 (D.C.Conn. 1968); Eberhard Manufacturing Co. v. Brown, 61 Mich. App. 268, 232 N.W.2d 378 (1975). As such, the "send to" term contained in this contract cannot, without more, convert this into a destination contract.
It therefore follows that the risk of loss in this case shifted to the plaintiff's decedent as buyer when the defendant Karinol as seller duly delivered the goods to the defendant freight forwarder American under a reasonable contract of carriage for shipment to the plaintiff's decedent in Chetumal, Mexico. The defendant Karinol, its agent the defendant American, and its insurer the defendant Fidelity could not be held liable to the plaintiff in this action. The trial court properly entered judgment in favor of all the defendants herein.
Affirmed.
NOTES
[1] We have since dismissed the appeal solely as to the defendant Fidelity as the notice of appeal was untimely as to such defendant.