Mr. Joseph G. Spicola, Jr. City Attorney City of Tampa 315 East Kennedy Boulevard Tampa, Florida 33602
Dear Mr. Spicola:
This is in response to your request for an opinion on substantially the following question:
 IS FUEL OIL ORDERED FROM AND SHIPPED BY COMMON CARRIER BY A FUEL OIL DEALER OR DISTRIBUTOR WITHIN THE CITY OF TAMPA TO A PURCHASER LOCATED OUTSIDE THE CORPORATE LIMITS OF THE CITY TAXABLE AS A `PURCHASE' WITHIN THE CITY UNDER s 166.231, F.S.?
Section 166.231(1)(a), F.S., authorizes the city to levy a tax on `the purchase' of certain utility services, the tax to be levied `only upon purchases within the municipality.' Section 166.231(2), provides that competitive services shall be taxed on a comparable base at the same rates, but that fuel oil shall be taxed at a rate not to exceed 4 cents per gallon. Subsection (6) requires the tax to be collected by the seller of the taxable item from the purchaser at the time of payment for such taxable service and remitted to the city in the manner prescribed by ordinance.
As used in the statute, the phrases `the purchase' and `purchases within the municipality' identify the determinative event upon which tax liability accrues.
The terms `the purchase' and `purchases within the municipality' for the purposes of s 166.231, F.S., are not statutorily defined. The first question that arises at this point is what the Legislature meant by these terms. Absent statutory definitions (which are controlling as against all other definitions unless a contrary intent clearly appears), words of a statute are to be given their ordinary meaning in absence of a clearly expressed contrary legislative intent in the context of the statute. Richard Bertram Co. v. Green, 132 So.2d 24 (3 D.C.A. Fla., 1961); State v. Tunnicliffe, 124 So. 279 (Fla. 1929); Southern Bell Telephone 
Telegraph Co. v. D'Alenberse, 21 So. 570 (Fla. 1897). Furthermore, when terms and provisions of a statute are plain, there is no reason for judicial or administrative interpretation; thus, it is presumed the Legislature meant what it said. Leigh v. State exrel. Kirkpatrick, 298 So.2d 215 (1 D.C.A. Fla., 1974).
The term `the purchase,' in s 166.231(1)(a), F.S., appears to be used as a noun. As a noun, `purchase' means acquisition; acquisition by way of bargain and sale; buying for a sum of money. The American Heritage Dictionary 1061 (1976). In its ordinary and accepted meaning, `purchase' is the transmission of property from one person to another by voluntary act and agreement for a valuable consideration, having the narrow signification of acquisition by voluntary act or agreement for a valuable consideration. See 73 C.J.S. Purchase, p. 1255.
The term `purchases,' as used in the statute is used as a verb and means to buy; to acquire, to acquire something by one's act or agreement for a price; to obtain title to; to obtain something by paying therefor. Id. at 1256.
Thus, s 166.231, F.S., contemplates the imposition of the public service tax upon the acquisition or purchase of the designated taxable items or services. To be taxed, such acquisitions or purchases must take place within the corporate limits of the municipality. City of Ocoee v. Bell, 108 So.2d 766 (2 D.C.A. Fla., 1959).
The remaining issue becomes, as you point out in your letter, whether a `purchase' occurs or is consumated within or without the corporate limits of the city. Since we are dealing specifically with title, the next question arises, `when does title pass?' There is lack of direct authority on this point, but it is my opinion that if the contract for the fuel oil is a shipment contract, then purchase takes place at the point of shipment within the corporate limits of the City of Tampa. However, if the contract is a destination contract, then the purchase takes place at the point the fuel oil is duly tendered at the destination which is specified in the contract, which may or may not be within the corporate limits of the City of Tampa. 28 Fla. Jur. Sales, ss 51, 88 and 89.
While there is no reference in s 166.231, F.S. to the Uniform Commercial Code as that body of contract law which should apply when applicable to `purchases' under that section, I can perceive no reason why, when a question arises under the instant section as to contract interpretation, one should not employ the Code as a frame of reference. In fact, my predecessor did just that in a similar opinion request involving s 166.231(1), F.S.; AGO 075-20. Article II of the Uniform Commercial Code does not define `purchase,' but the term `sale' is specifically defined in the Code, which is incorporated in the Florida Statutes.
Section 672.106(1), F.S., states that `[a] `sale' consists in the passing of title from the seller to the buyer for a price . . . .'
Section 672.401(2), F.S., states that `[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . .' See also ss 672.501(1), (a) and (b), F.S.
The remaining question is then, at what point does the seller complete performance with reference to the physical delivery? This is answered by subparagraphs (a) and (b) of s 672.401(2), F.S. If the contract is a shipment contract, then title passes at the point of shipment. If the contract is a destination contract, then title passes when the goods are duly tendered at the destination which is specified in the contract.
Thus, absent any explicit agreement as to when title passes, passage of title is entirely dependent on whether the contract involved in your question, is a shipment or destination contract. Unless the contract contains specific reference to F.O.B. Buyer's plant, or specifically styled a destination contract, it is my opinion that such contracts would be shipment contracts and title would pass in Tampa. Thus, since the sale would take place within the corporate limits of the City of Tampa, the tax in question will be due from the seller, regardless of whether the shipment is with or without a prepayment type arrangement. See the official comments of the Uniform Commercial Code after s 672.401, F.S.A., Pestana v. Karinol Corp., 367 So.2d 1096 (3 D.C.A. Fla., 1979).
In summary then, until judicially or legislatively determined otherwise, I am of the opinion that if the contract for the fuel oil is a shipment contract, then the purchase takes place at the point of shipment within the corporate limits of the municipality and as such the purchase will be subject to the tax imposed by s166.231, F.S. However, if the contract is a destination contract (i.e., F.O.B. Buyer's plant or specifically styled a destination contract), then the purchase takes place at the point the fuel oil is duly tendered at the destination which is specified in the contract, which may or may not be within the corporate limits of the municipality. In that case, the purchase may or may not be subject to the tax imposed by s 166.231, F.S. If the destination specified in the contract is within the corporate limits of the municipality, then the purchase would be subject to the provisions of s 166.231, F.S. Likewise, if the destination specified in the contract is outside the corporate limits of the municipality, then the purchase would not be subject to the provisions of s 166.231, F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joseph C. Mellichamp, III, Assistant Attorney General