476 So.2d 763 (1985)
LADEX CORPORATION, d/u/b/o Aetna Insurance Company, Appellant,
v.
TRANSPORTES AEREOS NACIONALES, S.A. d/b/a Tan Airways and Cole Transport, Inc., Appellees.
No. 84-2804.
District Court of Appeal of Florida, Third District.
October 15, 1985.
*764 C. Douglas Skinner, Miami, for appellant.
Thornton, Herndon, Mastrucci & Ferrington and Gail Ferrington and Richard B. Austin, Miami, for appellees.
Before BARKDULL, HUBBART and NESBITT, JJ.
NESBITT, Judge.
Ladex Corporation (Ladex) appeals a final summary judgment entered in favor of the defendants, Transporte Aereos Nacionales, S.A. (TAN) and Cole Transport, Inc. (Cole). We reverse.
The present litigation arose out of a contract between Ladex and Santeri Fisheries de Hondouras, S.A. (Santeri). The contract concerned 175 cartons of frozen shrimp that Ladex agreed to buy from Santeri. The shrimp were delivered by Santeri to TAN, the air carrier, and an air waybill was issued. The shrimp arrived at Miami International Airport and were transported to a Cole truck for delivery to Ladex's warehouse. Although the facts are somewhat sketchy on the record before us, we perceive that the truck containing the shipment of shrimp was hijacked while still in the loading area of the airport.
Ladex presented a claim to its insurer, Aetna Insurance Company (Aetna), for $37,328.50, the amount stated on the invoice from Santeri. Aetna issued a check for the amount, Ladex executed a loan and trust receipt, and Aetna instituted the litigation as Ladex's subrogee against TAN and Cole, the carriers, seeking recovery of $37,328.50. TAN moved for summary judgment arguing that the discovery deposition of Rafael Armada, representative of Ladex, disclosed that Ladex never paid Santeri for the shrimp and, therefore, suffered no loss and has no right to any recovery. Cole joined in TAN's motion for summary judgment at the hearing. Following the hearing, the trial court entered summary final judgment in favor of TAN and Cole, finding that Ladex "did not suffer any loss or damage" because it "never paid its supplier for the shipment."
It is generally held that a prima facie case in an action for damages against a carrier requires proof of delivery to the carrier in good condition; arrival in damaged condition or nondelivery; and finally, damages. See Missouri Pacific Railroad v. Elmore & Stahl, 377 U.S. 134, 138, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964). The present appeal involves the element of damages. TAN and Cole argue, as they did in the trial court, that since Ladex never paid Santeri for the shipment, Ladex has sustained no loss and, thus, no damages. We disagree.
Contrary to the carriers' arguments on appeal, whether or not Ladex had title to the shrimp at the time they were hijacked is all-important. If, in fact, Ladex had title to the shrimp when the shipment was stolen, it sustained damages by way of the loss of its property. Whether or not Ladex paid Santeri for the shrimp and whether or not Santeri chooses to sue Ladex for any amount due, are issues not relevant to the present litigation.[1] The invoice from Santeri is simply evidence of the value of the shrimp and, thus, the damages sustained. What this case does turn on is whether the agreement between Ladex and Santeri amounted to a shipment contract or a destination contract. See §§ 672.319-.320, Fla. Stat. (1981); Pestana v. Karinol Corp., 367 So.2d 1096 (Fla. 3d DCA 1979).
*765 A shipment contract is regarded as the normal contract where the seller is required to send the goods by carrier to the buyer but is not required to guarantee delivery at a particular location. Pestana, 367 So.2d at 1099. A C.I.F. or C. & F. contract is a shipment contract. See U.C.C. § 2-320 comment 1 (1978). In the normal shipment contract, the title to the goods and the risk of loss passes to the buyer when the goods are properly delivered to the carrier for shipment to the buyer. § 672.509(1)(a), Fla. Stat. (1981); U.C.C. § 2-320 comment 1 (1978); Pestana, 367 So.2d at 1099.
On the other hand, a destination contract is regarded as the variant type of contract in which the seller agrees to deliver the goods to the buyer at a particular destination and to bear the risk of loss until tender of delivery. § 672.509(1)(b), Fla. Stat. (1981); U.C.C. § 2-503 comment 5 (1978); Pestana, 367 So.2d at 1099. It follows that title to the goods remains in the seller at least through tender of the goods at the specified destination. A destination contract can be made by express provision in the sales contract or by the use of delivery terms such as "F.O.B. [destination]." Pestana, 367 So.2d at 1099. See § 672.319, Fla. Stat. (1981). It should be pointed out, however, that the parties must specifically agree to a destination contract, otherwise the contract will be considered a shipment contract. Pestana, 367 So.2d at 1099. See U.C.C. § 2-503 comment 5 (1978). See also 9 Fla.Jur.2d Carriers § 87 (1979).
All parties rely upon Armada's deposition testimony. Ladex points to Armada's specific testimony indicating that the contract between Ladex and Santeri was C.I.F.[2] In addition, Ladex's position is aided by the presumption that the contract is a shipment contract unless the terms of a destination contract have been specifically agreed to by the parties. See Pestana, 367 So.2d at 1099; U.C.C. § 2-503 comment 5 (1978); 9 Fla.Jur.2d Carriers § 87 (1979). If the invoice from Santeri and the air waybill, which contain no terms relevant to the issue, were the only evidence as to the terms of the contract, it would be deemed a normal shipment contract. See Pestana.
Cole argues, however, that Armada's deposition testimony indicates that the actual terms of the agreement were F.O.B. Ladex's warehouse in Miami. Although the testimony does tend to indicate that such was the course of dealing between Ladex and Santeri in the past, and there are some indications that the present agreement was no different, the argument is hard pressed in the face of Armada's specific testimony that the contract was C.I.F. We recognize that C.I.F. and F.O.B. contracts are not necessarily mutually exclusive of each other[3] and that the effect of nearly any provision of the Uniform Commercial Code, ch. 671-79, Fla. Stat. (1981), may be varied by agreement. See § 671-102(3), Fla. Stat. (1981). Accordingly, we find Cole's better argument on the record before us is that in the dealings between Ladex and Santeri, including the present one, the term C. & F.[4] was used but the parties agreed that Santeri would retain title to the shrimp (and the risk of loss) until the shipment was delivered to Ladex's refrigerated warehouse in Miami. Of course, this would require specific evidence as to the intention of the parties. As pointed out in the official comments to the Uniform Commercial Code, however, the dominant parameters of the C.I.F. and C. & F. terms are so well understood commercially that, whenever reasonably possible, any variation should be read as falling within those parameters, rather than as destroying the whole meaning of the term *766 which essentially indicates a contract for proper shipment rather than one for delivery at a destination. U.C.C. § 2-320 comment 14 (1978).
We find that the record before this court has not been sufficiently developed so that a determination can be made as a matter of law as to who had title to the shrimp when they were stolen. Factual issues remain as to what type of contract existed between Ladex and Santeri and who had title to the shrimp and the risk of loss at the time of the hijacking. If, in fact, Ladex had title at the time in question then it did sustain damages by way of the loss of its property.
Accordingly, the summary judgment under review is reversed and the cause is remanded for further proceedings.
NOTES
[1] Of course, if Ladex, as a consignee of a nonnegotiable air waybill, has not "given value," such may be a valid defense to an action brought pursuant to section 677.301, Florida Statutes (1981), for nonreceipt of the shipment. Nevertheless, it is not necessarily a bar to the common law actions brought by Ladex against the carriers. See § 671.103, Fla. Stat. (1981).
[2] We would tend to agree with Cole's observation in its brief that Armada must have meant C. & F. since Ladex had an "open" policy with Aetna. See U.C.C. § 2-320 comment 16 (1978).
[3] For instance, it has been observed by the supreme court that a normal C.I.F. contract is the equivalent of an agreement to deliver goods F.O.B. the point of shipment. See Farris & Co. v. Schluderberg, 142 Fla. 765, 196 So. 184 (1940) (on petition for rehearing).
[4] See supra note 2.