**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-12253

Non-Argument Calendar

————————————

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

*Plaintiff-Appellant,*

*versus*

SCENTS CORPORATION,

d.b.a.

PERFUMES OF THE WORLD,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court

for the Southern District of Florida

D.C. Docket No. 1:22-cv-21262-FAM

————————————

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

This case is about who bears the risk of loss for the theft of $351,543 of perfume goods during transit from the shippers to the buyer.  The district court concluded that the shippers bore the risk of loss because they misrepresented the goods being transported on their bills of lading, causing the carrier to fail to take adequate protections or to carry high-value insurance.  But in our view, the alleged inaccuracies in the shippers' bills of lading did not affect the validity of the shippers' tender of the goods to the buyer-hired carrier for shipment to the buyer.  And the evidence otherwise reflects that the goods were subject to a "shipment contract," under which "title to the goods and the risk of loss passes to the buyer when the goods are properly delivered to the carrier for shipment to the buyer." *Ladex Corp. v. Transportes Aereos Nacionales, S.A.*, 476 So. 2d 763, 765 (Fla. Dist. Ct. App. 1985).  So we vacate the district court's order on the parties' summary-judgment motions, and we remand for further proceedings consistent with this opinion.

## I.

Scents Corporation, doing business as Perfumes of the World ("POTW"), is a Texas corporation in the business of purchasing and selling perfume products.  In December 2018, POTW ordered a total of $351,543 in high-end perfume products from three perfume suppliers in Florida—Benron Perfumes, LLC, M&R Distributors International, LLC, and Elegance Distributors, Inc. (collectively, the "Shippers").  Each supplier issued an invoice for the respective purchases.

POTW then contracted with a freight broker, Total Quality Logistics ("TQL"), to arrange for a carrier to receive, load, and transport the perfume goods by semi-truck from the Shippers in Florida to POTW in Texas. TQL represented that it would hire a carrier with high-value insurance coverage to cover the perfume products, as POTW had requested. POTW paid all shipping and insurance charges associated with the shipment. But the carrier that TQL retained to handle the delivery, New Glory Corporation ("New Glory"), lacked high-value insurance coverage. New Glory collected and loaded the goods from each supplier in Florida onto a single semi-truck before embarking for Texas. Then, during transit, the truck and trailer containing the perfume products were stolen at a gas station.

After the theft, the Shippers demanded payment from POTW, which refused, and then submitted claims with their insurance underwriters at Lloyd's of London (Lloyds).[1] Lloyds paid the Shippers a total of $351,543 (less applicable deductibles), and then brought this subrogation action in state court against POTW to recover what it paid.

The case was removed to federal district court, and both Lloyds and POTW moved for summary judgment. Lloyds maintained that the risk of loss passed to POTW once the goods were received and loaded by the carrier, and that POTW breached the

---

[1] POTW sued the broker, TQL, but ultimately dropped the case as "too costly" to pursue, and did not receive any compensation. POTW also made a claim under its insurance, receiving $50,000.

purchase contracts by failing to make payment.  POTW admitted it did not make payment.  But it was justified in doing so, POTW asserted, because the Shippers' bills of lading materially misdescribed the goods tendered to the carrier, which caused the carrier to not take adequate safeguards to ensure shipment of the high-value perfumes.  As a result, in POTW's view, the risk of loss never passed.

The district court denied Lloyds's motion for summary judgment and granted POTW's cross-motion for summary judgment.  The court reasoned that "title and risk of loss" for the goods never passed to POTW because the Shippers materially misdescribed the goods tendered to the carrier in their bills of lading.  The court explained that, even if Lloyds was correct that the risk of loss ordinarily would have passed to POTW once the cargo was received by the carrier, the Shippers still "had an obligation to accurately describe the goods, regardless of shipment terms."  Because the Shippers did not meet that obligation, the "risk of loss did not pass to [POTW] because the delivery failed to conform to the contract."  Lloyds timely appeals.

## II.

We review the grant of summary judgment *de novo*.  *Stalley v. Cumbie*, 124 F.4th 1273, 1282 (11th Cir. 2024).  Summary judgment is not appropriate unless there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*; Fed. R. Civ. P. 56(a).  In making that determination,

we construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Stalley*, 124 F.4th at 1283.

## A.

In cases of theft during shipment, the critical question is which party "had title to the [goods] at the time they were hijacked." *Ladex Corp. v. Transportes Aereos Nacionales, S.A.*, 476 So. 2d 763, 764 (Fla. Dist. Ct. App. 1985). To determine risk of loss when a carrier is used to transport goods sold, Florida law, which governs this dispute,[2] distinguishes between "shipment contracts" and "destination contracts." *Id.*; *see Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462, 466–67 (Fla. Dist. Ct. App. 2020).

"A shipment contract is regarded as the normal contract where the seller is required to send the goods by carrier to the buyer but is not required to guarantee delivery at a particular location." *Ladex Corp.*, 476 So. 2d at 765. In the absence of breach, "title to the goods and the risk of loss passes to the buyer when the goods are properly delivered to the carrier for shipment to the buyer." *Id.*; *see* Fla. Stat. § 672.509(1)(a).

In a destination contract, in contrast, "the seller agrees to deliver the goods to the buyer at a particular destination and to bear the risk of loss until tender of delivery." *Ladex Corp.*, 476 So. 2d at 765; *see* Fla. Stat.672.509(1)(b). Under a destination contract, "title

---

[2] Because federal jurisdiction in this case rests on diversity jurisdiction, "we apply the law of the appropriate state, in this case Florida." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1254 (11th Cir. 1999).

to the goods remains in the seller at least through tender of the goods at the specific destination." *Ladex Corp.*, 476 So. 2d at 765. "The parties must explicitly agree to a destination contract; otherwise the contract will be considered a shipment contract." *Pestana v. Karinol Corp.*, 367 So. 2d 1096, 1099 (Fla. Dist. Ct. App. 1979).

Here, the record indicates that the agreements between POTW and the Shippers were shipment contracts, not destination contracts. The invoices included delivery terms such as F.O.B. "Origin," F.O.B. "Sunrise Wrhs,"[3] or ship via "Pick up," which, in context, contemplate a shipment contract, or at least do not expressly indicate a destination contract. *See Ladex Corp.*, 476 So. 2d at 764–65. POTW's corporate representative testified that it was standard in their industry for the buyer to arrange for pick up. And the record is clear that the carrier was hired by POTW, not the Shippers. Thus, "title to the goods and the risk of loss passe[d] to the buyer when the goods [we]re properly delivered to the carrier for shipment to the buyer." *Ladex Corp.*, 476 So. 2d at 765; *see* Fla. Stat. § 672.509.

**B.**

In granting summary judgment to POTW, the district court reasoned that title and risk of loss did not transfer to POTW because the Shippers made misrepresentations in their respective bills of lading about the products being shipped. The court found that the Shippers "had an obligation to accurately describe the goods,

---

[3] Enhance is located in Sunrise, Florida.

regardless of shipment terms," and that their failure to accurately describe the goods tendered caused "breaches of contract [that] negated transfer of any risk of loss." These breaches, in the court's view, meant that "the delivery failed to conform to the contract."

But as we just explained, under a shipment contract, in the absence of breach, "the risk of loss passes to the buyer when the goods are duly delivered to the carrier." Fla. Stat. § 672.509(1)(a). Breach can affect the risk of loss, including "[w]here a tender or delivery of goods so fails to conform to the contract as to give a right of rejection." Fla. Stat. § 672.510(1). In that scenario, "the risk of their loss remains on the seller until cure or acceptance." *Id.*

In concluding that the delivery failed to conform to the contract, *see* Fla. Stat. § 672.509(1)(a), the district court did not suggest that the perfume goods themselves failed to conform to the purchase contracts. There has been no suggestion that the goods purchased by POTW, as reflected in the invoices, were not actually loaded onto the carrier's truck for delivery. Instead, the court relied on the requirements of a seller to accomplish due "tender" of goods under a shipment contract. *See* Fla. Stat. § 672.504.

Section 672.504 states that, "unless otherwise agreed," a seller under a shipment contract must do these three things:

> (1) Put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case; and

(2) Obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade; and

(3) Promptly notify the buyer of the shipment.

Fla. Stat. § 672.504; *see* Fla. Stat. § 672.503(2) (requiring sellers under a shipment contract to comply with § 672.504); *see also Pestana*, 367 So. 2d at 1099.

The record indicates that the parties "otherwise agreed" with respect to subsection (1) by having POTW contract for transportation of the perfume goods, thereby relieving the Shippers of any independent obligation to make "a contract for their transportation." *See* Fla. Stat. § 672.504(2). Beyond that, it's undisputed that the Shippers "[p]ut the goods in the possession" of the carrier. *Id.* § 672.504(1). And there is no indication that subsection (3) was not followed. That leaves subsection (2). The district court reasoned that the Shippers' bills of lading failed to comply with subsection (2). Respectfully, we disagree.

For starters, POTW has not explained how the alleged inaccuracies on the bills of lading[4] were "necessary to enable the buyer to obtain possession of the good[s]." Fla. Stat. § 672.504(2). To be

---

[4] A "bill of lading" is a "document of title evidencing the receipt of goods for shipment," Fla. Stat. § 671.201(6), and "can serve as both a receipt and contract for the transport of goods," *Apex Capital LP v. Carnival Corp.*, 123 So. 3d 94, 96 (Fla. Dist. Ct. App. 2013).

sure, the bills of lading issued by the Shippers to the carrier arguably mislabeled boxes of high-end perfume products as "Toil[et] Prep Items" or "Toilet Preps," or offered no description beyond the number of boxes and pallets. But we see no evidence that POTW would have been unable to obtain possession of the boxes, whatever they contained, or to establish their right to possess the goods, given the invoices reflecting the goods purchased. Fla. Stat. § 672.504(2). It's undisputed that POTW contracted for delivery of the goods from the Shippers' locations to its facilities in Texas, and POTW was listed as the named consignee on the bills of lading.

Nor does the record provide grounds for concluding that more accurate bills of lading were "otherwise required by the agreement or by usage of trade." Fla. Stat. § 672.504(2). In this regard, the district court and POTW have relied on two statutory provisions relating to bills of lading. *See* Fla. Stat. §§ 677.301(5); 677.507(3). But neither is persuasive in this context.

Both statutes concern situations where a bill of lading has been transferred for value. Section 677.507 applies when "a person negotiates or delivers a document of title for value." Fla. Stat. § 677.507. In that situation, the "transferor . . . warrants to its immediate purchaser" that "[t]he negotiation or delivery is rightful and fully effective with respect to the title to the document and the goods it represents." *Id.* § 677.507(3). Similarly, § 677.301(1) provides that a transferee of a bill of lading for value—"[a] consignee of a nonnegotiable bill of lading which has given value in good faith," or "a holder to which a negotiable bill has been duly

negotiated"—"relying upon the description of the goods in the bill," can recover damages from the issuer of the bill of lading for misdescriptions. *Id.* § 677.301(1). Subsection (5), in turn, speaks to apportioning liability between the shipper and the issuer of the bill of lading, providing that the "shipper shall indemnify the issuer" against damage caused by inaccuracies in information "furnished by the shipper." *See id.* § 677.301(5).

Here, though, we see no evidence that the Shippers' bills of lading were transferred "for value," such that these provisions would apply, since POTW hired and paid for the carrier through a broker. Moreover, the "issuer" of the bills of lading and the "shipper" were one and the same in this case, so there is no liability to allocate under § 677.301(5). Insofar as the Shippers' alleged misdescriptions harmed the carrier or the broker, these entities are not parties to this case and have not been sued for inaccuracies in the bill of lading. *See* Fla. Stat. § 677.301(5). Nor is it clear why an indemnification provision between shipper and carrier would affect the transfer of title and risk of loss between shipper and buyer.

Accordingly, POTW has not shown that it was entitled to judgment as a matter of law on Lloyds's claim for breach of contract.

## C.

In sum, we vacate the grant of POTW's motion for summary judgment. The evidence reflects that the perfume goods were transported under shipment contracts, meaning "title to the goods and the risk of loss passe[d] to the buyer when the goods

[we]re properly delivered to the carrier for shipment to the buyer," POTW.  *See Ladex Corp.*, 476 So. 2d at 765.  And POTW has not established as a matter of law that the risk of loss failed to pass due to alleged inaccuracies in the Shippers' bills of lading.

As for the denial of Lloyds's motion for summary judgment, POTW maintains that the Shippers waived their claims by submitting "insurance claim[s] for the theft of the perfume products—not for failure to pay or breach of contract by POTW."  This argument was raised below but not addressed by the district court.  We decline to consider the issue for the first time on appeal, and instead remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**